# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHNMARK MAJUC and JOSEPH JOK, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:18-cv-00566 (APM) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I.

This case concerns a Freedom of Information Act ("FOIA") request seeking records concerning BNP Paribas, S.A. ("BNPP") collected during a criminal investigation by the United States Department of Justice ("DOJ" or "Defendant"). *See* Compl., ECF No. 1, ¶¶ 1–2. The DOJ prosecuted BNPP in the Southern District of New York ("SDNY") for evading economic sanctions against Sudan, Iran, and Cuba, and BNPP ultimately pleaded guilty to conspiracy to violate the International Emergency Economic Powers Act and Trading with the Enemy Act. Public Decl. of John E. Cunningham III, ECF No. 21-2 [hereinafter Cunningham Decl.], Ex. 4, 6. Plaintiffs Johnmark Majuc and Joseph Jok, two Sudanese refugees, believe that the requested documents are relevant to a class action lawsuit pending against BNPP. *See* Compl., ¶ 3; *see also Kashef, et al. v. BNP Paribas S.A., et al.*, No. 1:16-cv-03228-AJN (S.D.N.Y., filed April 29, 2016).

Before the court are the parties' cross-motions for summary judgment. For the reasons discussed below, the parties' motions are denied.

II.

On November 17, 2016, Plaintiffs submitted a FOIA request seeking thirty-three categories of documents pertaining to the DOJ's investigation of BNPP for facilitating financial transactions with Sudan in violation of U.S. sanctions. Cunningham Decl., Ex. 1. The DOJ assigned the FOIA request to the Criminal Division, and informed Plaintiffs that it was searching the sections that it thought most likely to contain responsive records. *Id.* at Ex. 2. Approximately four months later, the DOJ rejected Plaintiffs' request in its entirety and refused to produce even a single page. It notified Plaintiffs that "after carefully considering [their] request," the DOJ had "determined that all responsive records are exempt from disclosure pursuant to Exemption 7(A), which permits withholding records or information compiled for law enforcement purposes when disclosure could reasonably be expected to interfere with enforcement proceedings." *Id.* at Ex. 3. On July 20, 2017, Plaintiffs appealed to the DOJ's Office of Information Policy. *Id.* at Ex. 4. A month later, the Office of Information Policy affirmed the Criminal Division's decision, explaining that the Criminal Division properly withheld the records pursuant to Exemption 7(A) because "it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision." *Id.* at Ex. 5.

Plaintiffs brought this FOIA action against the DOJ, seeking to compel disclosure of documents relating to the agency's investigation of BNPP's evasion of Sundanese sanctions. *See generally* Compl. The DOJ filed a Motion for Summary Judgment. *See* Mem. of P. & A. in Support of Def.'s Mot. for Summ. J., ECF No. 21 [hereinafter Def.'s Mem.]. In its motion, the DOJ primarily invoked Exemption 7(A), asserting that "all responsive records" were exempted under this subsection "because their release would likely cause harm to active and ongoing criminal investigations." *Id.* at 5. The DOJ also invoked Exemptions 3, 4, 5, 6, 7(C), and 7(D) to

withhold information within responsive records. *Id.* Plaintiffs filed a Motion in Opposition and Cross-Motion for Summary Judgment. *See* Pls.' Opp. to Mot. for Summ. J. and Pls.' Cross-Mot. for Summ. J., ECF No. 29.

III.

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if a reasonable factfinder could find for the nonmoving party, and a fact is "material" only if it is capable of affecting the outcome of litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

The agency bears the burden of proving that it withheld information responsive to a plaintiff's FOIA request pursuant to a statutory exemption. *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice* (*CREW*), 746 F.3d 1082, 1088 (D.C. Cir. 2014). "The agency may carry that burden by submitting affidavits that 'describe the justification for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Id.* (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). The agency's affidavits or declarations must "describe the documents and the justifications for nondisclosure with reasonably specific detail" and "demonstrate that the information withheld logically falls within the claimed exemption." *Military Audit Project v.*

3

*Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Further, they must not be "controverted by either contrary evidence in the record [or] by evidence of agency bad faith." *Id*. (citations omitted); *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 181–82 (D.D.C. 2011). A court may grant summary judgment in a FOIA case by relying solely on information included in the agency's affidavits or declarations if they are "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted).

"To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (citation and internal quotation marks omitted).

IV.

The court finds that Defendant's justification for categorically withholding all records under Exemption 7(A) is insufficient and does not extinguish all genuine issues of material fact.[1] The court so holds for three reasons.

A.

First, it is unclear whether there is any ongoing enforcement proceeding. The D.C. Circuit has established that "Exemption 7(A) is temporal in nature." *CREW*, 746 F.3d at 1097. For the exemption to apply, a "proceeding must remain pending at the time of [the court's] decision, not only at the time of the initial FOIA request." *Id.* Thus, records created at the time of an ongoing investigation are not automatically shielded from disclosure under 7(A). Rather, the documents must remain pertinent to "concrete prospective law enforcement proceeding" at the time of the

---

[1] Because Exemption 7(A) reaches all records, and the court finds its application insufficiently supported, the court need not at this time consider the other asserted exemptions.

court's decision. *Id.* Vague mentions of ongoing proceedings are not enough to support Exemption 7(A). *See id.* at 1098.

Here, the court is left uncertain whether there is, at present, a pending investigation involving the responsive records. Defendant's declarant, John E. Cunningham, states that the DOJ withheld the records under 7(A) because the records "were created during the continuing case against BNP Paribas S.A., as well as other active and ongoing criminal law enforcement investigations related to that matter" and "any release of the documents and records . . . would be premature and likely to cause harm to both active and ongoing law enforcement proceedings." Cunningham Decl. ¶¶ 13, 14. He provides additional facts in an ex parte and in camera declaration, ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████ The court cannot grant summary judgment when faced with such glaring ambiguity about "whether a related investigation is in fact ongoing." *CREW*, 746 F.3d at 1099. That is particularly true when, as here, the DOJ is claiming that all responsive records are categorically exempt from disclosure under 7(A).

Additionally, the DOJ argues that the criminal case against BNPP is itself still ongoing, even though the bank pleaded guilty in 2014. *See* Def.'s Mot. at 10; Cunningham Decl. ¶ 12 (the records "are all part of continuing case against [BNPP]"). By "ongoing" the DOJ means that BNPP is still subject to a five-year probation term, which began on May 15, 2015. *USA v. BNP Paribas S.A.*, 1:14-cr-00460-LGS (S.D.N.Y., filed 07/09/2014), ECF No. 57. But Defendant cites

no case from the D.C. Circuit or any other appellate court holding that the mere pendency of post-conviction monitoring and compliance of a corporate defendant qualifies as a "concrete prospective law enforcement proceeding." The cases cited by the DOJ suggesting that probation should be considered an ongoing enforcement proceeding are factually distinct, and in any case, they are not binding on this court. *See* Mem. of P. &A. in Further Support of Def.'s Mot. for Summ. J. and in Opp. To Pls.' Cross-Mot. for Summ. J., ECF No. 33, at 3 (citing *ABC Home Health Servs., Inc. v. U.S. Dep't of Health and Human Servs.*, 548 F. Supp. 555 (N.D. Ga. 1982); *Alaska Pulp Corp. v. NLRB*, No. C90-1510D, 1991 U.S. Dist. LEXIS 21947 (W.D. Wash. Nov. 4, 1991)). In any event, the DOJ does not assert that there is any actual or reasonably anticipated investigation or enforcement activity in connection with BNPP's probationary status. *See CREW*, 746 F.3d at 1096.

Moreover, at a minimum, the DOJ must show how disclosure of specific categories of documents could be reasonably expected to interfere with proceedings connected to BNPP's probationary status. *See id.* at 1097. This it is has failed to do. *See id.* (remanding for the DOJ to clarify "how the disclosure of the documents . . . would interfere with" a related investigation).

B.

Second, it is not apparent to the court how there could be any ongoing criminal exposure for other persons or entities connected to BNPP's evasion of Sudanese sanctions. The default statute of limitations for federal non-capital offenses is typically five years from the last violation. *See* 18 U.S.C. § 3282(a); *see United States v. Brodie*, 524 F.3d 259, 273 (D.C. Cir. 2008). BNPP's illegal conduct in Sudan ended in 2007. Statement of Facts, *U.S. v. BNP Paribas S.A.*, 1:14-cr-00460-LGS-1, ECF No.13-2 [hereinafter Statement of Facts], ¶ 40. It is now 12 years later. The

DOJ has not explained how any entity or person remains exposed to criminal liability for conduct that ceased more than a decade ago.[2]

C.

Finally, the factual recitation accompanying BNPP's plea agreement, *see generally* Statement of Facts, is detailed enough that it raises doubts about the DOJ's claim that disclosure would interfere with an ongoing investigation, if there is one. At the very least the DOJ's reasons are diminished.

The DOJ argues that disclosure of the records would, among other things, subject "individual and potential witnesses who possess information relevant relative to the investigations" to harm or intimidation and lead to their refusal to cooperate; "allow subjects of the investigations to assess the likelihood that he or she may be prosecuted []or convicted in connection with the investigations"; reveal locations where the Criminal Division is focusing its investigations; reveal offices or employees who are involved in particular investigations; and provide insight to potential targets "such that they could change their behavior in ways that would frustrate the investigations." Cunningham Decl. ¶¶ 15–16.

It is true that Exemption 7(A) serves, at least in part, to ensure that agencies are not "hindered in their investigations or placed at a disadvantage when it [comes] time to present their case." *CREW*, 746 F.3d at 1096 (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)). Congress cited the prevention of "harm [to] the Government's case in court" as a primary motivating factor for enacting Exemption 7, and therefore did not "allow[] litigants earlier or greater access to agency investigatory files than they would otherwise have." *Robbins Tire*,

---

[2] The court recognizes that in cross-border investigations, like the one at issue here, the limitations period can be tolled notwithstanding the passage of five years. *See, e.g.,* 18 U.S.C. § 3292 (authorizing suspension of the statute of limitations to obtain foreign evidence). The DOJ has offered no indication, however, that any tolling is applicable in this case.

7

437 U.S. at 224–25 (citations and internal quotation marks omitted).  In this case, such concerns would appear to have less force.  The investigation and prosecution of the bank has been public for a number of years, so the notion that a person or entity related to BNPP's sanctions violations might not know that he or she is, or will be subject to, an investigation seems dubious at best.  Further, the factual proffer supporting BNPP's plea contains significant details about the time, manner, and means of the bank's violations.  It quotes extensively from BNPP's internal emails and corporate records and highlights specific activities of BNPP officials at the center of the scheme.  The DOJ does not acknowledge these detailed disclosures, let alone evaluate how they might impact the asserted risks of premature disclosure.  Simply put, the DOJ has neither described the documents and "the justifications for nondisclosure with reasonably specific detail" nor "demonstrate[d] that the information withheld logically falls within the claimed exemption."  *CREW*, 746 F.3d at 1088 (citation omitted).

V.

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 21, is denied.  Plaintiffs' Cross Motion for Summary Judgment, ECF No. 29, is also denied.  The parties shall appear for a status hearing on September 26, 2019, at 10:00 a.m. to discuss future proceedings in this matter.

Dated:  September 13, 2019

Amit P. Mehta
United States District Judge