**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOHN MARK MAJUC, et al.,

                    Plaintiffs,

          v.                                    Civil Action No. 18-cv-0566 (APM)

UNITED STATES DEPARTMENT
OF JUSTICE,

                    Defendant.

**DECLARATION OF COURTNEY J. O'KEEFE**

          I, Courtney J. O'Keefe, declare the following to be true and correct:

          1.      I am an Attorney in the Freedom of Information Act ("FOIA")/Privacy Act

("PA") Unit in the Office of Enforcement Operations in the Criminal Division of the United

States Department of Justice ("Department" or "DOJ").  I have held this position since February

2020.  I was previously employed as an Attorney with the Department's Office of Information

Policy from 2015-2018 and with the Department's National Security Division from 2018-2020.

          2.      In my capacity as an Attorney in the FOIA/PA Unit, and in conjunction with the

Chief and Deputy Chief of the FOIA/PA Unit, I assist in supervising the handling of FOIA and

PA requests processed by the FOIA/PA Unit.  I am responsible for, among other things,

providing litigation support and assistance to Assistant United States Attorneys and Civil

Division Trial Attorneys who represent the Criminal Division in lawsuits filed in federal court

under the FOIA and/or the PA stemming from requests for Criminal Division records.

          3.      The FOIA/PA Unit is responsible for processing FOIA/PA requests that seek

records from the Criminal Division.  The FOIA/PA Unit determines whether the Criminal

Division maintains records responsive to FOIA/PA requests, and if so, whether they can be released in accordance with the FOIA and the PA.  In processing such requests, the FOIA/PA Unit consults with personnel in the Criminal Division sections where potentially responsive records may be maintained and, when appropriate, with other components within the Department of Justice, as well as with other Executive Branch agencies.

4.      Due to the nature of my official duties, I am familiar with the procedures followed by the Criminal Division in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the PA, 5 U.S.C. § 552a.  Specifically, I am familiar with the FOIA request submitted by Plaintiffs to the Criminal Division that is at issue in this litigation and the Criminal Division's search and response to that request.

5.      I make the statements herein on the basis of personal knowledge, as well as on information provided to me by others within the Criminal Division with knowledge of the search and documents at issue in this case and on information acquired by me in the course of performing my official duties in the FOIA/PA Unit.

**Administrative History of Plaintiffs' FOIA Request**

6.      By letter dated November 17, 2016, Plaintiffs submitted, through counsel, a FOIA request to the Justice Management Division ("JMD") of the United States Department of Justice seeking various records "arising from [the Department's] investigation of BNP Paribas, S.A. and its affiliates for their role in processing financial transactions for the Government of Sudan." The request sought records from 1995 through the present.  A copy of Plaintiffs' FOIA request, dated November 17, 2016, is attached hereto as Exhibit A.

7.      Upon receipt of the request, JMD determined that it had been misdirected, and rerouted the request to the Criminal Division, FOIA/PA Unit on December 2, 2016.

2

8.      By letter dated December 30, 2016, the FOIA/PA Unit acknowledged Plaintiffs' request.  In the letter, the FOIA/PA Unit informed Plaintiffs' counsel that it was assigning their FOIA request administrative tracking number CRM-300572076.  Additionally, the FOIA/PA Unit informed Plaintiffs that it was searching the section(s) most likely to maintain responsive records, and because the request presented "unusual circumstances," the FOIA/PA Unit was extending the time limit to respond to the request by an additional ten days provided by statute. A copy of the Criminal Division's acknowledgement letter, dated December 30, 2016, is attached hereto as Exhibit B.

9.      On January 30, 2017, the FOIA/PA Unit sent a search request via its electronic FOIA Tracking Database to the Criminal Division's Money Laundering and Asset Recovery Section ("MLARS")[1] which led the Department's investigation and prosecution of BNP Paribas, S.A ("BNPP").  MLARS was asked to conduct a search to identify any potentially responsive records and/or custodians of records for the following: records regarding BNPP's business dealing with the Government of Sudan, interviews with witnesses summarizing evidence, and any other documents related to BNPP's financial support of the Government of Sudan.

10.     By letter dated April 21, 2017, the FOIA/PA Unit issued its response to Plaintiffs' FOIA request, through counsel, informing Plaintiffs that the FOIA/PA Unit determined that all responsive records were exempt from disclosure pursuant to Exemption 7(A), which permits withholding records or information compiled for law enforcement purposes when disclosure could reasonably be expected to interfere with enforcement proceedings.  See 5 U.S.C. § 552

---

[1] MLARS was formerly designated as the "Asset Forfeiture and Money Laundering Section" ("AFMLS") of the Criminal Division.  MLARS led the Criminal Division's investigation and prosecution of BNPP while operating under its former AFMLS designation.

(b)(7)(A).  A copy of the Criminal Division's response letter, dated April 21, 2017, is attached hereto as Exhibit C.

11.     On July 20, 2017, Plaintiffs, through their legal counsel, filed an administrative appeal with the Department of Justice's Office of Information Policy (OIP).  A copy of Plaintiffs appeal, dated July 20, 2017, is attached hereto as Exhibit D.

12.     By letters issued via email on August 22, 2017 and via FOIAonline on August 25, 2017, OIP denied Plaintiffs' administrative appeal.  Specifically, OIP stated that the Criminal Division properly withheld the information related to Plaintiffs' request because it was protected from disclosure pursuant to 5 U.S.C. § 552 (b)(7)(A) and it was reasonably foreseeable that disclosure of this information would harm the interests protected by the provision.  Copies of OIP's letters, dated August 22, 2017 and August 25, 2017, denying Plaintiffs' administrative appeal are attached hereto as Exhibit E.

13.     On March 13, 2018, Plaintiffs filed the instant lawsuit in connection with their November 17, 2016 FOIA request.  See Compl., ECF No. 01.

14.     Because the Criminal Division had already issued its final response letter to Plaintiffs, as explained in paragraph 9, the parties moved for summary judgment.

15.     On September 13, 2019, the Court issued its order denying the parties' cross-motions for summary judgment.  See Opinion and Order, ECF No. 41.

16.     In October 2019, the parties agreed to a list of search terms provided by Plaintiffs.  The FOIA/PA Unit subsequently conducted searches within the records located in 2017, as described in paragraph 9, for responsive records based upon this list of search terms. The FOIA/PA Unit also discussed the records searched with MLARS employees who had worked on the Department's investigation and prosecution of BNPP.

4

17.     The FOIA/PA Unit's searches returned a voluminous amount of records which led the parties to engage in conversations to narrow the scope of Plaintiffs' request.[2]

18.     On February 10, 2020, Plaintiffs' counsel met with the FOIA/PA Unit and provided a document entitled of "Proposed Requests for Initial Searches and Production" in order to narrow the scope of their request and facilitate the FOIA/PA Unit's review and processing of responsive records.  The FOIA/PA Unit agreed to prioritize Plaintiffs' proposed requests and began reviewing and processing responsive records based upon Plaintiffs' proposal.

<u>Interim Responses to Plaintiffs' FOIA Request</u>

19.     On September 22, 2020, after processing 888 pages of records, the FOIA/PA Unit issued its first interim response.  The 888 pages were determined to be exempt from disclosure pursuant to 5 U.S.C. § 552(b)(3), (b)(4), (b)(6), (b)(7)(A), and (b)(7)(C).  A copy of this first interim response letter to Plaintiffs, dated September 22, 2020, is attached hereto as Exhibit F.

20.     On November 20, 2020, after processing an additional 825 pages of records, the FOIA/PA Unit issued its second interim response.  825 pages were determined to be exempt from disclosure pursuant to 5 U.S.C. § 552(b)(4), (b)(6), and (b)(7)(C).[3]  A copy of this second interim response letter to Plaintiffs, dated November 20, 2020, is attached hereto as Exhibit G.[4]

---

[2] The adequacy of the FOIA/PA Unit's search for responsive records is not in dispute between the parties at this time.

[3] During the course of re-reviewing these records while preparing the <u>Vaughn</u> Index for this matter, the FOIA/PA Unit determined that some of these records should also be withheld pursuant to FOIA Exemptions 3 and 7(A).

[4] While preparing the <u>Vaughn</u> Index for this matter, the FOIA/PA Unit discovered that thirty-six duplicative pages had inadvertently not been marked as such.  Therefore, the correct total number of pages withheld in full is 789 pages as opposed to 825 pages as originally stated in the FOIA/PA Unit's second interim response letter.

21.      On November 20, 2020, Plaintiffs sought relief from the Court regarding the FOIA/PA Unit's first two interim responses.  <u>See</u> Motion for Telephone Conference, ECF No. 62.

22.      On November 30, 2020, the Court held a telephonic status conference.  It was agreed that the Department would provide a draft <u>Vaughn</u> Index to Plaintiffs' counsel regarding the first two interim responses in an effort to narrow issues that would require judicial resolution. In the event that the parties were not able to resolve the matter informally, the parties would file dispositive motions pertaining to the FOIA/PA Unit's first two interim responses.  The parties also agreed that the FOIA/PA Unit would suspend processing and issuing interim responses during the course of briefing the first two interim responses.  <u>See</u> Joint Status Report, ECF No. 66.

23.      On February 5, 2021, the FOIA/PA Unit provided Plaintiffs a draft <u>Vaughn</u> Index pertaining to the first two interim responses.

24.      On February 16, 2021, Plaintiffs informed the FOIA/PA Unit that they would challenge the FOIA/PA Unit's first two interim responses as described in paragraphs 19-20 in full and would proceed with filing dispositive motions pertaining to the FOIA/PA Unit's first two interim responses.

### <u>Description of Documents and Withheld Material</u>

25.      The documents that the FOIA/PA Unit withheld consist entirely of business records submitted by BNPP to the Department of Justice during the course of the Department's investigation into and prosecution of BNPP for violations of U.S. laws.  A <u>Vaughn</u> Index containing descriptions of the records withheld in full is attached to this declaration as Exhibit H.

## Exemption 3

26.    FOIA Exemption 3 exempts from disclosure information which is:

> Specifically exempted from disclosure by statute… provided such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld. 5 U.S.C. § 552(b)(3).

27.    For the reasons set forth in my *ex parte, in camera* declaration, the Criminal Division withholds information pursuant to Exemption 3, relying on Federal Rule of Criminal Procedure 6(e) which pertains to information concerning grand jury proceedings.  Rule 6(e) is among the Federal statutes that prohibit disclosure and warrant protection under Exemption 3. See Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856, 867 (D.C. Cir. 1981).

## Exemption 4

28.    Exemption 4 exempts from mandatory disclosure trade secrets and commercial or financial information obtained from a person that is privileged or confidential. 5 U.S.C. § 552(b)(4).  Commercial or financial information is confidential if it is of a kind that would customarily not be released to the public by the person or entity from whom it was obtained.  See Food Mktg. Inst. v. Argus Leader Media, 139 S. Ct. 2356, 2362-63 (2019).  As discussed in detail below, the records protected by the FOIA/PA Unit in full pursuant to FOIA Exemption 4 consist of confidential, commercial information obtained from a third-party.  These records are also described in Categories 1-8 of the attached Vaughn Index.

29.    The records submitted by BNPP to DOJ during the course of the Department's criminal investigation into BNPP contain information relating to BNPP's internal operations, compliance programs, internal financial controls, and business strategy, as well as

memoranda and presentations prepared by outside counsel for BNPP as part of an internal review of BNPP's compliance with U.S. economic sanctions laws.  This information is "commercial" within the meaning of Exemption 4, because it serves a commercial function and is of a commercial nature in that it is helpful or instrumental to BNPP's business interests and operations.  BNPP has a commercial interest in the information related to their business activities, as establishing and maintaining these activities requires a substantial dedication of company resources and protects the bank from potential financial and reputational damages of potential losses.

   30. The information contained in the withheld records is "confidential" because BNPP would not customarily release this information publicly.  When BNPP submitted the withheld records to DOJ, BNPP's counsel stated in letters to the Department that it was requesting confidential treatment of these records under the FOIA and marked the majority of the records provided as confidential for purposes of FOIA.  Moreover, BNPP's counsel requested that DOJ not release the submitted materials publicly and maintain the records in a non-public facility.  Accordingly, BNPP submitted these records with the intention that DOJ would not disclose these records and that they be treated confidentially.  Additionally, upon submission of these records, BNPP understood that DOJ would maintain confidentiality of these records, based on MLARS practice of typically treating such materials as confidential.

   31. Upon receipt of the instant lawsuit seeking to compel disclosure of confidential business information, the FOIA/PA Unit was required to notify BNPP of this lawsuit pursuant to Department FOIA regulations.  See 28 C.F.R. § 16.7(h).  Accordingly, the FOIA/PA Unit provided BNPP's counsel, via email, notification of the filing of the instant lawsuit and informed BNPP that should any records potentially be released in the course of this litigation, BNPP

would have an opportunity to review the information and provide objections prior to any disclosure to Plaintiffs.

32.     Release of these documents would likely cause BNPP, as well as their affiliated business and financial entities, substantial competitive harm by allowing BNPP's competitors to use the company's proprietary information to their competitors' commercial advantage.  Here, the withheld records contain large amounts of sensitive commercial information concerning, among other things, banking protocols and analyses of BNPP's transactions, outside counsel's assessments of BNPP's internal compliance policies with U.S. economic sanctions laws and financial embargoes, policies and protocols regarding transactional issues, and legal advice from outside counsel regarding compliance with U.S financial embargoes and related economic sanctions.  Disclosure of this confidential information would allow competitors to use the details of BNPP's internal operations, financial controls, and compliance programs as a free roadmap to explain how BNPP operates internally, conducts transactions, and complies with international banking laws and regulations.  Additionally, release of these records would permit competitors to discern which business practices BNPP has found may be conducted in international commerce without violating U.S. economic sanctions and other financial embargo laws, what activities to avoid, and how to build an internal compliance program and system of controls, allowing competitors to avoid the costs that BNPP incurred in gaining this information and developing protocols.  Furthermore, disclosure of the records would provide insight into how BNPP conducted a complex internal review of BNPP's compliance with U.S. economic sanctions laws and financial embargoes.  It could also exploit any vulnerabilities in BNPP's banking systems to the competitors' own advantage.  Public dissemination of this information could harm BNPP and the public by making it easier for their employees, customers or third parties working with

BNPP, potentially including criminals, to evade the bank's protocols, financial controls, and compliance directives.  BNPP would not customarily disclose this type of information for the very reasons discussed in this paragraph and to ensure that BNPP's internal business operations, financial controls, and compliance programs, as well as their related decision-making processes, are kept confidential.

33.     Disclosing these records would impair the ability of DOJ and other government regulatory and enforcement entities to obtain the necessary information in the future and dissuade others from submitting similar information to DOJ.  When DOJ accepts documents voluntarily from a third-party during a law enforcement investigation, it requires that it receives accurate and complete information because it is crucial in furthering the objectives of an investigation.  Public disclosure of that information, which BNPP does not customarily disclose, would likely make other banks and companies less forthcoming when they submit records to DOJ under similar circumstances and less likely to cooperate in these investigations.  Moreover, if DOJ does not receive complete and accurate information, it could impede the progress of a law enforcement investigation because DOJ would not be able to adequately assess information submitted, which in turn would harm its interest in efficient and effective enforcement of criminal laws.

34.     All of the information contained in these records is protected in full as confidential commercial information because it is reasonably foreseen that disclosure of these records would harm the interests protected by the provisions of Exemption 4.  Additionally, certain information withheld pursuant to Exemption 4 is also protected from disclosure by Exemptions 3, 6, 7(A), and 7(C), as detailed further in this declaration and in my *ex parte*, *in*

*camera* declaration filed concurrently before this Court.  Accordingly, further segregation was not possible.

**Exemption 6 and 7(C)**

35.     FOIA Exemption 6 protects information in "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is generally read broadly to encompass any file containing information that applies to a particular person.  Here, the records constitute "similar files" as they contain the names of Department personnel.

36.     FOIA Exemption 7(C) protects information "compiled for law enforcement purposes" and protects personal privacy when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  The Criminal Division develops, enforces, and supervises the application of federal criminal laws.  The documents responsive to Plaintiffs' request contain law enforcement information pertaining to third-party individuals, including information regarding criminal investigations.  Accordingly, these records were compiled for a law enforcement purpose and readily meet the threshold of Exemption 7.

37.     When withholding information pursuant to these two exemptions,[5] the FOIA/PA Unit is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure.  For purposes of this analysis, a public interest exists

---

[5]  The FOIA/PA Unit's practice is to assert Exemption 6 in conjunction with Exemption 7(C).  Although the balancing test for Exemption 6 uses a "*would* constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "*could* reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion.  The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

when information would shed light on the Criminal Division's performance of its mission to develop, enforce, and supervise the application of all federal criminal laws.  Courts have generally found that individuals (including law enforcement personnel) have protectable privacy interests in relation to being associated with criminal investigations and prosecutions.  Courts also generally have found that there is no overriding public interest in such information because personal information about individuals typically does not clarify or significantly increase the public's understanding of the operations and activities of the Department of Justice.  Here, Exemptions 6 and 7(C) would justify withholding the identifying information and contact information of individuals that appear in criminal law enforcement communications and documents.

38.     The FOIA/PA Unit determined that certain information contained in the withheld records includes the names and/or identifying information of third parties.  The names of those third parties not publicly affiliated with the investigation were withheld.

39.     Information withheld by FOIA/PA Unit pursuant to Exemption 6 and 7(C), as described in the attached Vaughn Index consist of:  (1) the names and identifying information of BNPP personnel; (2) contact information for BNPP employees, including email addresses; (3) names and identifying information of outside counsel for BNPP; and, (4) contact information for outside counsel, including email addresses, as well as office and mobile phone numbers.

40.     DOJ determined that the privacy interests of the third-party individuals in this type of information are substantial (more than de minimis).  Names and identifying information of BNPP personnel, as well as BNPP's outside counsel, were located in various documents relating to an internal review of BNPP's compliance with U.S. economic sanctions laws and financial embargoes, including interview documents and associated memoranda, email chains,

legal advice memoranda, and presentations.  These documents were then relied upon by DOJ in

the course of its criminal investigation.  Neither those BNPP employees nor outside counsel

affiliated with BNPP's internal review were publicly acknowledged by or affiliated with DOJ's

investigation.  Accordingly, DOJ has not identified any cognizable public interest in the

disclosure of this kind of information.  Release of personal details would not add to the public's

understanding of how DOJ operates or how well DOJ performs its statutory duties.  Accordingly,

the substantial privacy interests protected by withholding this information outweigh the non-

existent public interest that might be served by its release.

41.     In each instance where information was withheld from Plaintiffs pursuant to

Exemptions 6 and 7(C), the FOIA/PA Unit determined that the privacy interests were not

outweighed by any FOIA public interest in disclosure of that information, and it is reasonably

foreseeable that disclosure of this information would harm the interests protected by this

provision of the FOIA.  Additionally, all the information protected by Exemptions 6 and 7(C)

fell within material protected under Exemptions 3, 4, and 7(A), as detailed further in this

declaration and in my *ex parte*, *in camera* declaration filed concurrently before this Court, so

additional segregation was not possible.

## Exemption 7

42.     Exemption 7 of the FOIA protects from mandatory disclosure "records or

information compiled for law enforcement purposes, but only to the extent that that the

production of such law enforcement records or information [could reasonably be expected to

cause one of the six sets of harms enumerated in the subpart of the exemption]."  5 U.S.C. §

552(b)(7).

**Exemption 7: Threshold**

43.     Before an agency can withhold information pursuant to FOIA Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes.  Law enforcement agencies such as the Criminal Division must demonstrate that the records at issue are related to the enforcement of federal laws, and that the law enforcement activity is within the duties of the agency.

44.     On May 15, 2015, in United States of America v. BNP Paribas S.A., Case No. 14-cr-00460-LGS (USDC-SDNY), the United States District Court for the Southern District of New York entered an amended judgment as to BNPP, placing the Defendant on a term of probation of 5 years (hereinafter "the BNPP matter").  See United States of America v. BNP Paribas S.A., Case No. 14-cr-00460-LGS (USDC-SDNY), ECF No. 57.  This probationary period expired on or about May 15, 2020.  For reasons discussed in my *ex parte, in camera* declaration, the Criminal Division withheld documents, specifically Categories 1-6 of the attached Vaughn Index.  These records were compiled for law enforcement purposes and readily met the threshold of Exemption 7.

**Exemption 7(A)**

45.     FOIA Exemption 7(A) authorizes the withholding of information:

> Compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information… could reasonably be expected to interfere with enforcement proceedings.
> 5 U.S.C. § 552(b)(7)(A).

46.     Application of this exemption requires: (a) the existence of law enforcement records; (b) a pending or prospective law enforcement proceeding; and, (c) a determination that release of the information could reasonably be expected to interfere with an enforcement proceeding.  The Criminal Division has exempted from disclosure responsive records from

14

Categories 1-6 of the <u>Vaughn</u> Index, attached hereto, pursuant to FOIA Exemption 7(A) because these law enforcement records relate to ongoing criminal law enforcement investigations.  For the reasons set forth below and in my *ex parte, in camera* declaration, the Criminal Division withholds this information pursuant to FOIA Exemption 7(A).[6]

**<u>Types of Law Enforcement Records Exempted Under Exemption 7(A)</u>**

47.    The responsive records withheld that pertain to active and continuing law enforcement matters pursuant to Exemption 7(A) include the following types of documents submitted by BNPP to the Department:

A. *Documents Related to Transactions, Banking/and or Business Entities (<u>Vaughn</u> Index Categories 1- 6):* These documents include but are not limited to the following: internal BNPP transaction, banking and/or business records, transaction and banking policies, internal electronic messaging or emails, correspondence between banking and/or business entities.  This category of documents also includes internal bank emails and correspondence with bank customers.

B. *Emails (<u>Vaughn</u> Index Category 3):* These documents include internal emails exchanged among BNPP employees, as well as outside counsel for BNPP, concerning BNPP transactions, explanatory information and legal advice regarding U.S. financial embargoes and economic sanctions, as well as various compliance policies pertaining to U.S. economic sanctions and embargoes.

C. *Internal Review documents (<u>Vaughn</u> Index Categories 1, 4, 5):* The documents in this category include correspondence, memoranda, presentations, and other material

---

[6] The FOIA/PA Unit is no longer asserting FOIA Exemption 7(A) categorically over all of the records withheld in full, but instead has applied it after making a record-by-record determination.

among BNPP employees and outside legal counsel during the course of their legal representative capacity of BNPP while conducting an internal review of BNPP's compliance with U.S. economic sanctions laws and financial embargoes.

<u>Reasonable Expectation of Interference</u>

48.     The Criminal Division has determined that any release of the records described above to the Plaintiffs would be premature and likely to cause harm to both continuing and pending law enforcement proceedings.[7]  Once documents are released and are in the public domain, information concerning an ongoing investigation could reach the individuals or entities being investigated, thereby allowing such individuals or entities to understand the extent of the grand jury strategy, and to critically analyze the documents concerning the investigation. In reaching these conclusions, the Criminal Division has determined that the responsive records generally fall within one category: evidentiary and investigative materials.

49.     **Evidentiary and Investigative Materials:**  This category includes records that the Department continues to utilize for evidentiary purposes in ongoing investigations.  These records consist of emails among BNPP employees and outside counsel, as well as memoranda and presentations pertaining to BNPP's compliance with U.S. economic sanctions laws and various transactional and business records.  The information contained in these records includes, among other things, discussions of BNPP's business in relation to U.S. economic sanctions programs, transactional documents, internal compliance review material, summaries of BNPP employee interviews conducted by outside counsel, and the identification of persons and entities of interest related to the ongoing investigations.  The disclosure of such information would harm

---

[7]  The records subject to this briefing do not include records referenced in the Statement of Facts entered by the parties in <u>U.S. v. BNP Paribas S.A.</u>, 14-cr-00460, ECF No.13-2.

ongoing investigations in numerous ways.  The identification of individuals, entities, and potential witnesses who possess information relative to the investigations would subject those individuals to possible harm and/or intimidation and could lead to their refusal to cooperate with the investigation along with negative consequences to their well-being.  The disclosure of evidence and the identification of persons of interest could allow those individuals to counteract evidence developed by investigators, resulting in the potential that individuals may alter or destroy evidence or create false evidence.  It would also allow subjects of the investigations to assess the likelihood that they may be prosecuted and/or convicted in connection with the investigations, which can result in changes to their behavior that frustrate the investigations. Moreover, the identification of locations (whether in the United States or elsewhere) where the Criminal Division is focusing their investigations and collecting investigative and source material could reveal the overall scope of the investigations, and further identify the suspects, witnesses, and evidence that are at issue in these investigations.

## <u>Segregation of Non-Exempt Information</u>

50.     I have carefully reviewed the records at issue and determined that there is no non-exempt information that could be segregated for release.  These records are exempt from disclosure in full pursuant to FOIA Exemption 4 and, accordingly, no non-exempt information can be reasonably segregated for disclosure, as discussed above in paragraph 34.  Additionally, certain records are also exempt from disclosure under FOIA Exemptions 3, 4, 6, 7(A), and 7(C). The specific segregability determinations for information protected pursuant to FOIA Exemptions 6, and 7(C) are discussed above in paragraph 41 of this declaration.  The specific segregability determinations for information protected pursuant to FOIA Exemptions 3 and 7(A) are discussed in my *ex parte, in camera* declaration filed concurrently before this Court.

17

I declare under penalty of perjury that the foregoing is true and correct.


_____
Courtney J. O'Keefe


Executed this 5th day of March 2021.

# Exhibit A

# McKool Smith

Matthew P. Rand
Direct Dial: (213) 694-1131
mrand@mckoolsmithhennigan.com

300 South Grand Avenue
Suite 2900
Los Angeles, CA 90071

Telephone: (213) 694-1200
Facsimile: (213) 694-1234

November 17, 2016

**VIA U.S. POST AND EMAIL**
Karen McFadden
FOIA Contact
Justice Management Division
Department of Justice
Room 1111 RFK
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

     RE:     Request Pursuant to Freedom of Information Act, 5 U.S.C. § 552

Dear Ms. McFadden:

     Our firm represents a class of Sudanese refugees—including class representatives John Mark Majuc, Turjuman Ramadan Adam, Joseph Jok, and Shafika Hassan—in *Kashef, et al. v. BNP Paribas S.A., et al.*, No. 1:16-cv-03228 (S.D.N.Y., filed Aug. 23, 2016).

     We write on behalf of John Mark Majuc, Turjuman Ramadan Adam, Joseph Jok, and Shafika Hassan to request documents under the Freedom of Information Law arising from your investigation of BNP Paribas, S.A and its affiliates for their role in processing financial transactions for the Government of Sudan. As the Department of Justice is aware, as a result of this investigation, BNP Paribas, S.A. pleaded guilty to violating federal sanctions law and N.Y.'s Falsifying Business Records Act. BNP Paribas also agreed to a Statement of Facts as part of its plea deal. For your convenience, I have attached a copy of the Statement of Facts to this letter.

     Our specific requests are set forth in the attached Exhibit A. We authorize you to incur expenses up to $1,000 in compiling and duplicating the records sought. We shall reimburse you promptly for all such expenses. If expenses exceeding $1,000 will be incurred in connection with this request, please contact us promptly before proceeding.

     We look forward to a response within 20 working days, as provided by law. We are also available at your convenience to discuss our requests with you. If you have any questions, please contact Matthew P. Rand at (212) 402.9431 or MRand@mckoolsmith.com, K. Lee Crawford at (213) 694.1180 or LBoyd@mckoolsmith.com, or Thomas Watson at (213) 694.1095 or TWatson@mckoolsmith.com.

**McKool Smith**
**A Professional Corporation • Attorneys**
**Austin | Dallas | Houston | Los Angeles | Marshall | New York | Silicon Valley | Washington, DC**

1262755v2

Karen McFadden
FOIA Contact
November 17, 2016
Page 2


Thank you for your prompt attention to this matter.

Very truly yours,

*/s/ Matthew P. Rand*

Matthew P. Rand

Enclosures

# EXHIBIT A

## EXHIBIT A

### Time Frame

This request seeks information dated or created between January 1, 1995 and the present.

### Definitions

1.      "BNPP" shall mean BNP Paribas, S.A., its affiliates, and its agents.

2.      "Documents" shall mean documents, communications, and records, whether in hard copy, computer files, or other media.

3.      "GOS" shall mean the Government of Sudan and its affiliates.

4.      "SOF" shall mean the Statement of Facts entered agreed to by BNPP as part of its plea deal with the District Attorney of the County of New York, a copy of which is attached hereto.

5.      "You" or "Your" shall mean the Department of Justice and any offices or agencies under its control.

### Requests

1.      All Documents gathered by You as part of Your investigation into BNPP's violation of New York law and Federal law with respect to BNPP's dealings with Sudan.

2.      All Documents reflecting or created in connection with Your investigation into BNPP's violation of New York law and Federal law with respect to BNPP's dealings with Sudan, including any interviews with witnesses and memoranda summarizing evidence collected.

3.      All Documents that mention or relate to BNPP and the war, militarization, violence or human rights abuses in Sudan, including but not limited to BNPP's knowledge that its actions supported the war, militarization, violence and human rights abuses in Sudan.

4.      All Documents that mention or relate to BNPP's support of the GOS.

5.      All Documents that mention or relate to Sudan's oil industry and the growth of its oil revenue.

6.      All Documents that mention or relate to BNPP's "co-conspirators," as referenced in the SOF, including Documents sufficient to identify the "co-conspirators."

7.      All Documents that mention or identify the BNPP employees who participated in the conduct described in the SOF.

1

8.     All Documents that evidence, mention, or relate to the letters of credit and/or syndicated loans originated by BNPP for the GOS.

9.     All documents, communications, memoranda, policies, and meeting minutes mentioned or referenced in the SOF.

10.     All Documents that mention or relate to the "Specially Designated Nationals," as referenced in the SOF, including Documents sufficient to identify the "Specially Designated Nationals."

11.     All Documents that mention or relate to the instructions that co-conspirator sanctioned entities and BNPP gave to each other, as referenced in the SOF.

12.     All Documents that mention or relate to transactions that BNPP processed through other financial institutions in the U.S.

13.     All Documents that mention or relate to BNPP's use of cover payments and payment messages to process transactions on behalf of the GOS.

14.     All Documents that mention or relate to "Sudanese Government Bank 1," as referenced in the SOF, including Documents sufficient to identify "Sudanese Government Bank 1."

15.     All Documents that mention or relate to the "Satellite Banks," as referenced in the SOF, including Documents sufficient to identify the "Satellite Banks."

16.     All Documents that evidence, mention, or relate to BNPP Geneva's decision to become Sudanese Government Bank 1's sole correspondent bank in Europe.

17.     All Documents that evidence, mention, or relate to Sudanese Government Bank 1's instructions to other banks in Sudan to use BNPP Geneva as their primary European correspondent bank.

18.     All Documents that evidence, mention or relate to BNPP's filters to block financial transactions involving entities subject to U.S. sanctions, as referenced in the SOF.

19.     All Documents that mention or relate to the "Sanctioned Entities," as referenced in the SOF, including Documents sufficient to identify the "Sanctioned Entities.

20.     All Documents that evidence, mention or relate to BNPP's agreement with the Sanctioned Entities not to mention the Entities' names in U.S. dollar transactions.

21.     All Documents that evidence, mention or relate to BNPP's internally published policies for processing U.S. dollar payments involving Sudan, as referenced in the SOF.

22.     All Documents that evidence, mention or relate to the 2004 Memorandum of Understanding between BNPP and DFS and the Federal Reserve Bank of New York.

23.     All Documents that mention or relate to "U.S. Bank 1," as referenced in the SOF, including Documents sufficient to identify "U.S. Bank 1."

24.     All Documents that mention, support, or relate to the following statement in the SOF: "In July 2005, for example, a BNPP Geneva employee noted how high-level business managers at BNPP were aware of and supported the transactions involving Sudan . . . ."

25.     All Documents that mention, support, or relate to the following statement in the SOF: "In August 2005, for example, a senior compliance officer at BNPP Geneva expressed concern about the use of satellite banks and emphasized the unusual nature of these operations given the fact that BNPP Geneva was not typically in the business of providing correspondent banking services."

26.     All Documents that mention, support, or relate to the following statement in the SOF: "In September 2005, senior compliance officers at BNPP Geneva arranged a meeting of BNPP executives 'to express, to the highest level of the bank, the reservations of the Swiss Compliance office concerning the transactions executed with and for Sudanese customers.'"

27.     All Documents that mention or relate to the meeting of BNPP executives referenced in Request No. 22 above.

28.     All Documents that evidence, mention or relate to BNPP's July 2006 policy that acknowledged the applicability of U.S. sanctions to non-U.S. banks, as referenced in the SOF.

29.     All Documents that mention or relate to the July 2006 Credit Committee Meeting of BNPP's general management, as referenced in the SOF.

30.     All Documents that mention or relate to BNPP's June 2007 decision to stop its U.S. dollar business with Sudan.

31.     All Documents that mention or relate to the Department of Justice's consideration of using "the criminal forfeiture secured by the United States Department of Justice, Asset Forfeiture and Money Laundering Section and the United States Attorney's Office for the Southern District of New York in the matter of United States v. BNP Paribas S.A." "to compensate individuals harmed by the sanctioned regimes of Sudan, Cuba, or Iran," including any analyses thereof and any memoranda discussing or approving a victim's compensation fund.

32.     All Documents that mention or relate to the Department of Justice's establishment of the website www.usvbnpp.com, including any memoranda approving it.

33.     All Documents that mention or relate to the amount of money the GOS spent on its military.

3

# Exhibit B



**U.S. Department of Justice**

Criminal Division

---

*Office of Enforcement Operations*                    *Washington, D.C. 20530*

**VIA Electronic Mail**                    December 30, 2016

Matthew P. Rand, Esq.
McKool Smith Hennigan, P.C.
Suite 2900
300 South Grand Avenue                    Request No. CRM-300572076
Los Angeles, CA  90071                    Referring Agency No. 2016-1117
mrand@mckoolsmithhennigan.com             Subject: BNP Paribas, S.A.

Dear Mr. Rand:

The Criminal Division has received your request for information concerning the above-mentioned subject, which was routed to this Office by the Mail Referral Unit and received in this Office on December 2, 2016. The request number listed above has been assigned to this request. Please use this number in all correspondence concerning this matter.

☒ Your request has been received by the Freedom of Information Act/Privacy Act Unit and we are searching the section(s) most likely to maintain responsive records.

☒ Because your request presents "unusual circumstances" (See 5 U.S.C. § 552(a)(6)(B)(i)-(iii)), we are extending the time limit to respond to your request an additional ten days provided by the statute.

I assure you that your request will be processed as soon as possible. If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact me by telephone at (202) 616-0307, by email at crm.foia@usdoj.gov, or by mail at the Criminal Division, U.S. Department of Justice, Suite 1127, Keeney Building, NW, Washington, DC 20530-0001.

You may contact our FOIA Public Liaison at the telephone number listed above for any further assistance and to discuss any aspect of your request. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

2

     If you have any questions regarding this referral of records, you may contact the Office by telephone at (202) 616-0307, by email at crm.foia@usdoj.gov, or by mail at the Criminal Division, U.S. Department of Justice, Suite 1127, Keeney Building, Washington, DC 20530-0001.

     Sincerely,

     Amanda Marchand Jones
     Chief
     FOIA/PA Unit

# Exhibit C



**U.S. Department of Justice**

Criminal Division

---

*Office of Enforcement Operations*                    *Washington, D.C. 20530*

**VIA Electronic Mail**                               April 21, 2017

Matthew Rand, Esq.
McKool Smith Hennigan, P.C.
Suite 2900
300 S. Grand Ave.
Los Angeles, CA 90071
mrand@mckoolsmithhennigan.com              Request No. CRM-300572076

Dear Mr. Rand:

     This responds to your Freedom of Information Act request dated November 17, 2016 and received in this Office on December 2, 2016 for records concerning the Department of Justice investigation into BNP Paribas, S.A. and its affiliates.

     After carefully considering your request, this Office has determined that all responsive records are exempt from disclosure pursuant to Exemption 7(A), which permits withholding records or information compiled for law enforcement purposes when disclosure could reasonably be expected to interfere with enforcement proceedings. 5 U.S.C. § 552(b)(7)(A).

     For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

     You may contact our FOIA Public Liaison at the (202) 616-0307 for any further assistance and to discuss any aspect of your request. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

     If you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked

2

or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

*Amanda Marchand Jones*

Amanda Marchand Jones
Chief
FOIA/PA Unit

Exhibit D

# McKool Smith

Matthew P. Rand
Direct Dial: (213) 694-1131
mrand@mckoolsmithhennigan.com

300 South Grand Avenue
Suite 2900
Los Angeles, CA 90071

Telephone: (213) 694-1200
Facsimile: (213) 694-1234

July 20, 2017

**VIA ELECTRONIC SUBMISSION AND U.S. MAIL COPY**
Director, Office of Information Policy
United States Department of Justice
Suite 11050
1425 New York Avenue, NW
Washington, DC 20530-0001

RE:   Denial of Request No. CRM-300572076 Pursuant to Freedom of Information
        Act

To Whom It May Concern:

Our firm represents a class of Sudanese refugees—including class representatives John
Mark Majuc, Turjuman Ramadan Adam, Joseph Jok, and Shafika Hassan—in *Kashef, et al. v.
BNP Paribas S.A., et al.*, No. 1:16-cv-03228 (S.D.N.Y., filed Aug. 23, 2016).

We write on behalf of John Mark Majuc, Turjuman Ramadan Adam, Joseph Jok, and
Shafika Hassan to appeal the denial of access regarding our Freedom of Information Act
("FOIA") request dated November 17, 2016 (the "Request"), the receipt of which was
acknowledged by letter on December 13, 2016 by Assistant Director Kevin Krebs. By letter
dated April 21, 2017, your office denied the entirety of the Request (the "Denial"). For your
convenience, I enclose copies of the Request (Exhibit A), the acknowledgment of receipt of the
Request (Exhibit B), and the Denial (Exhibit C).

The Request sought documents that are of interest to our clients because they suffered as
a result of BNPP's actions and they want to know the full scope of what occurred. Specifically,
the records sought include the following:

1.       Documents gathered by the Department of Justice ("DOJ") as part of its
         investigation into the violation of New York and federal law by BNP
         Paribas, S.A. ("BNPP") pertaining to its dealings with Sudan;

2.       Documents that support specified paragraphs in the Statement of Facts
         attached to the Plea Agreement between BNPP and the Office of the
         United States Attorney for the Southern District of New York;

**McKool Smith**
**A Professional Corporation • Attorneys**
**Austin  |  Dallas  |  Houston  |  Los Angeles  |  Marshall  |  New York  |  Silicon Valley  |  Washington, DC**

1262631v1

July 20, 2017
Page 2

3.        Documents related to the 2004 Memorandum of Understanding between BNPP and the New York Department of Financial Services and the Federal Reserve Bank of New York;

4.        Documents related to BNPP"s July 2006 policy that acknowledged the applicability of U.S. sanctions to non-U.S. banks, as referenced in the Statement of Facts;

5.        Documents related to BNPP's U.S. dollar business with Sudan;

6.        Documents related to BNPP's business with Sudan that also reference oil transactions by Sudan; and/or

7.        Documents related to BNPP's business with Sudan that also reference or relate to Sudan's purchase of weapons internationally or its domestic weapons industry.

The DOJ denied the Request in full. The Denial stated only that "all responsive records are exempt from disclosure pursuant to Exemption 7(A), which permits withholding records or information compiled for law enforcement purposes when disclosure could reasonably be expected to interfere with enforcement proceedings." Denial at 1 (citing 5 U.S.C. § 552(b)(7)(A)). No further information was provided.

It is well settled that the agency invoking Exemption 7(A) may not simply assert that it applies to every responsive document. *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1098 (D.C. Cir. 2014) (stating that "it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings" (citation omitted)). Instead, the agency must "demonstrate *how* disclosure will" interfere with enforcement proceedings. *Id.* (quotation and citation omitted); *see also Dugan v. Dep't of Justice*, 82 F. Supp. 3d 485, 500 (D.D.C. 2015) ("Defendant must show, by more than a conclusory statement, how the particular kinds of investigatory records requested would interfere with a pending enforcement proceeding." (quotations, citation, and alteration omitted)). "The withheld material must relate to a concrete *prospective* law enforcement proceeding," *Durrani v. U.S. Dep't of Justice*, 607 F. Supp. 2d 77, 89 (D.D.C. 2009) (quotation and citation omitted) (emphasis added), which the agency has the burden to identify or to provide "sufficient facts from which the likelihood of such a proceeding may be reasonably inferred." *Id.* at 90. Finally, rather than making a blanket assertion that an exemption applies to multiple requested documents, the agency must show how the exemption applies to each withheld document. *See id.*

Respectfully, the DOJ has not met its burden. It failed to identify any concrete enforcement proceeding, let alone a *prospective* one. The proceeding that formed the basis of the Request ended on June 30, 2014—*i.e.*, over three years ago—when BNPP pleaded guilty to violating U.S. sanctions. Further, rather than providing the required document-by-document explanation as to how disclosure would interfere with the prospective proceeding, the DOJ asserted only that Exemption 7(A) applies to every withheld document. Such an explanation is clearly insufficient.

July 20, 2017
Page 3

We look forward to a response within 20 business days.

Very truly yours,

Matthew P. Rand

Enclosures

# Exhibit E

**U.S. Department of Justice**
Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

Matthew P. Rand, Esq.
McKool Smith
Suite 2900
300 South Grand Avenue
Los Angeles, CA 90071
mrand@mckoolsmithhennigan.com

Re: Appeal No. DOJ-AP-2017-005805
Request No. CRM-3005722076
MWH:JMB

**VIA: Email**

Dear Mr. Rand:

You appealed on behalf of a class of Sudanese refugees, from the action of the Criminal Division of the United States Department of Justice on their Freedom of Information Act request for access to various records concerning BNP Paribas, S.A. I note that your appeal concerns only the withholdings made by the Criminal Division.

After carefully considering your appeal, I am affirming the Criminal Division's action on your clients' request. The FOIA provides for disclosure of many agency records. At the same time, Congress included in the FOIA nine exemptions from disclosure that provide protection for important interests such as personal privacy, privileged communications, and certain law enforcement activities. The Criminal Division properly withheld this information in full because it is protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(A) and it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision. This provision concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to interfere with enforcement proceedings.

Please be advised that this Office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your clients' underlying request, and the action of the Criminal Division in response to your clients' request. If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal. Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

If your clients are dissatisfied with my action on your appeal, the FOIA permits them to file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

- 2 -

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  Using OGIS services does not affect your clients' right to pursue litigation.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

8/22/2017

X ~~Matthew M~~

Matthew Hurd, Associate Chief, for
Sean O'Neill, Chief, Administrative Appeals ...
Signed by: MATTHEW HURD



**U.S. Department of Justice**
Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

Mr. Matthew Rand, Esq.
McKool Smith Hennigan, P.C.
Suite 2900
300 South Grand Avenue                Re:    Appeal No. DOJ-AP-2017-005493
Los Angeles, CA 90071                         Request No. CRM-300572076
mrand@mckoolsmithhennigan.com                 CDT:PJA

**VIA: FOIAonline**

Dear Mr. Rand:

        You appealed from the action of the Criminal Division of the United States Department
of Justice (CRM) on your Freedom of Information Act request for access to records concerning
the Department's investigation into BNP Paribas, S.A. and its affiliates.

        After carefully considering your appeal, I am affirming the Criminal Division's action on
your request. The FOIA provides for disclosure of many agency records. At the same time,
Congress included in the FOIA nine exemptions from disclosure that provide protection for
important interests such as personal privacy, privileged communications, and certain law
enforcement activities. The Criminal Division properly withheld this information in full because
it is protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(7)(A) and it is
reasonably foreseeable that disclosure of this information would harm the interests protected by
this provision. This provision concerns records or information compiled for law enforcement
purposes the release of which could reasonably be expected to interfere with enforcement
proceedings.

        Please be advised that this Office's decision was made only after a full review of this
matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and
analyzed your appeal, your underlying request, and the action of the Criminal Division in
response to your request. If you have any questions regarding the action this Office has taken on
your appeal, you may contact this Office's FOIA Public Liaison for your appeal. Specifically,
you may speak with the undersigned agency official by calling (202) 514-3642.

        If you are dissatisfied with my action on your appeal, the FOIA permits you to file a
lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

        For your information, the Office of Government Information Services (OGIS) offers
mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-

- 2 -

exclusive alternative to litigation.  Using OGIS services does not affect your right to pursue litigation.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

8/25/2017

X _Christina Troiani_

Christina D. Troiani, Associate Chief, for
Sean O'Neill, Chief, Administrative Appeals Staff
Signed by: CHRISTINA TROIANI

Exhibit F



**U.S. Department of Justice**

Criminal Division

---

*Office of Enforcement Operations*                    *Washington, D.C. 20530*

**VIA Electronic Mail**                    September 22, 2020

Ms. Kathryn Lee Boyd
Hecht Partners LLP
125 Park Avenue, 25th Floor          Re: <u>John Mark Majuc and Joseph Jok v. U.S.</u>
New York, NY 10017                   <u>Department of Justice</u>, 18-cv-00566-APM
lboyd@hechtpartners.com              (D.D.C.)

Dear Ms. Boyd:

This is an interim response to your clients' Freedom of Information Act/Privacy Act (FOIA/PA) request dated November 17, 2016, for records regarding the Department of Justice investigation into BNP Paribas, S.A. and its affiliates pertaining to processing financial transactions for the Government of Sudan. Your request is currently the subject of litigation: <u>John Mark Majuc and Joseph Jok v. U.S. Department of Justice</u>, 18-cv-00566-APM (D.D.C.). You should refer to this case number in any future correspondence with this Office.

Please be advised that a search has been conducted in the appropriate sections and we are continuing to review and process the collected records. This response pertains to eight hundred eighty-eight (888) pages of records. After carefully reviewing, I have determined that all eight hundred eighty-eight (888) pages are exempt from disclosure pursuant to:

5 U.S.C. § 552(b)(3), which concerns matters specifically exempted from release by statute (in this instance, Federal Rule of Criminal Procedure 6(e), which pertains to records pertaining to grand jury proceedings);

5 U.S.C. § 552(b)(4), which concerns records containing trade secrets and/or commercial or financial information obtained from a person or company that is privileged or confidential;

5 U.S.C. § 552(b)(6), which concerns materials the release of which would constitute a clearly unwarranted invasion of the person privacy of third parties;

5 U.S.C. § 552(b)(7)(A), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to interfere with enforcement proceedings; and,

5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties.

Please be advised that foreign language records are also part of this case file. This interim response includes English translations of certain records that have been processed.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

For any further assistance and to discuss any aspect of your request, you may contact Assistant United States Attorney Brenda Gonzalez Horowitz by phone at (202) 252-2512 or by mail at U.S. Attorney's Office for the District of Columbia, Civil Division, 555 4th Street, N.W., Washington, DC 20001.

Although your request is the subject of litigation, I am required by statute to inform you that if you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account on the following website: https://foiastar.doj.gov. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Amanda Marchand Jones
Chief
FOIA/PA Unit

Cc: Brenda Gonzalez Horowitz (Brenda.Gonzalez.Horowitz@usdoj.gov)

# Exhibit G



**U.S. Department of Justice**

Criminal Division

_Office of Enforcement Operations_                                   _Washington, D.C. 20530_

**VIA Electronic Mail**                              November 20, 2020

Ms. Kathryn Lee Boyd
Hecht Partners LLP
125 Park Avenue, 25th Floor                 Re: John Mark Majuc and Joseph Jok v. U.S.
New York, NY 10017                          Department of Justice, 18-cv-00566-APM
lboyd@hechtpartners.com                     (D.D.C.)

Dear Ms. Boyd:

        This is the second interim response to your clients' Freedom of Information Act/Privacy
Act (FOIA/PA) request dated November 17, 2016, for records regarding the Department of
Justice investigation into BNP Paribas, S.A. and its affiliates pertaining to processing financial
transactions for the Government of Sudan. Your request is currently the subject of litigation:
John Mark Majuc and Joseph Jok v. U.S. Department of Justice, 18-cv-00566-APM (D.D.C.).
You should refer to this case number in any future correspondence with this Office.

        Please be advised that a search has been conducted in the appropriate sections and we are
continuing to review and process the collected records. This response pertains to eight hundred
twenty-five (825) pages of records. After carefully reviewing, I have determined that all eight
hundred twenty-five (825) pages are exempt from disclosure pursuant to:

        5 U.S.C. § 552(b)(4), which concerns records containing trade secrets and/or commercial
        or financial information obtained from a person or company that is privileged or
        confidential;

        5 U.S.C. § 552(b)(6), which concerns materials the release of which would constitute a
        clearly unwarranted invasion of the person privacy of third parties; and,

        5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law
        enforcement purposes the release of which could reasonably be expected to constitute an
        unwarranted invasion of the personal privacy of third parties.

        Please be advised that foreign language records are also part of this case file. This interim
response only pertains to English translations of certain records that have been processed.

        For your information, Congress excluded three discrete categories of law enforcement
and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c). This

2

response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

For any further assistance and to discuss any aspect of your request, you may contact Assistant United States Attorney Brenda Gonzalez Horowitz by phone at (202) 252-2512 or by mail at U.S. Attorney's Office for the District of Columbia, Civil Division, 555 4th Street, N.W., Washington, DC 20001.

Although your request is the subject of litigation, I am required by statute to inform you that if you are not satisfied with my response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account on the following website: https://foiastar.doj.gov. Your appeal must be postmarked or electronically transmitted within 90 days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Amanda Marchand Jones
Chief
FOIA/PA Unit

Cc: Brenda Gonzalez Horowitz (Brenda.Gonzalez.Horowitz@usdoj.gov)

# Exhibit H

**<u>Majuc and Jok v. United States Department of Justice, No. 18-cv-00566 (D.D.C.)</u>**

***U.S. Department of Justice, Criminal Division <u>Vaughn</u> Index (March 5, 2021)***

This <u>Vaughn</u> Index contains a description of one thousand six hundred seventy-seven (1,677) pages of records protected in full by the Criminal Division FOIA/PA Unit, pursuant to the Freedom of Information Act ("FOIA").[1]  The documents represented in this <u>Vaughn</u> Index are organized by category.  These documents consist entirely of business records submitted by BNP Paribas S.A. to the Department of Justice, Criminal Division during the course of a law enforcement investigation.  Certain records detailed in this <u>Vaughn</u> Index are English translations of foreign-language documents submitted by BNP Paribas S.A. to the Department of Justice, Criminal Division.

**<u>Acronyms/Abbreviations Used in this Index:</u>**

BNPP = BNP Paribas S.A.
DOJ = United States Department of Justice
FOIA = Freedom of Information Act
FOIL = Freedom of Information Law
WIF = Withheld in Full

| Category No. | Document Category/Title/ Description | Status | Exemption(s) | Justification |
|---|---|---|---|---|
| | | | | |
| | **Interview Summary Memoranda** | | | |
| **CRM-01** | Memoranda prepared by outside counsel for BNPP that are marked as FOIA/FOIL Confidential.  These memoranda summarize interviews of BNPP employees conducted by outside counsel as part of an internal review | WIF 598 pages | (b)(3) (b)(4) (b)(6) (b)(7)(A) (b)(7)(C) | (b)(3):  These documents contain (or their disclosure would reveal) matters specifically exempted from release by statute (in this instance, Federal Rule of Criminal Procedure 6(e), which pertains to records regarding grand |

___

[1] During the course of preparing this <u>Vaughn</u> Index, the Criminal Division FOIA/PA Unit discovered that thirty-six duplicative pages had inadvertently not been marked as such.  Thus, the correct total number of pages withheld in full is 1,677 pages as opposed to 1,713 pages as originally stated in the FOIA/PA Unit's first and second interim response letters.  These thirty-six duplicative pages were reflected in the second interim response letter.

<table>
<tr><td>

of BNPP's compliance with U.S. sanctions laws and financial embargoes against countries, including Sudan.

Among other things, the memoranda reflect outside counsel for BNPP's interview strategy, refer to the interviewee's position and responsibilities within BNPP, cover the employees' knowledge of payment systems and processes within BNPP, discuss interactions with BNPP personnel and compliance departments, knowledge of U.S. economic sanctions or embargoes pertaining to specific countries, and BNPP's handling of U.S. economic sanctions or embargoes of countries including Sudan.

These documents contain the names and identifying information of outside counsel for BNPP.

</td><td></td><td></td><td>

jury proceedings).  Disclosure of this information would reveal, among other things, information concerning strategies behind grand jury investigations.

(b)(4): These documents contain (or their disclosure would reveal) substantial commercial or financial information obtained from BNPP that is privileged or confidential. BNPP customarily keeps such information private or closely held, DOJ provided an express or implied assurance of confidentiality to BNPP, and there were no express or implied indications at the time these records were submitted that DOJ would publicly disclose the information.

(b)(6) & (7)(C): These documents contain personal information concerning private individuals whose release could reasonably be expected to "constitute an unwarranted invasion of personal privacy."  The mention of a private individual's name in a law enforcement file engenders comment and speculation and could produce an unfair stigma which could expose the individual to harassment or criticism. The individuals' substantial privacy interests outweigh any purported public interest in disclosure in these circumstances.

(b)(7)(A): These documents contain (or their disclosure would reveal) information compiled

</td></tr>
</table>

| | | | | |
|---|---|---|---|---|
| | | | | for law enforcement purposes the release of which could reasonably be expected to interfere with enforcement proceedings. |
| | | | | |
| | **BNPP Transactional Data Chart** | | | |
| | | | | |
| **CRM-02** | Chart containing data entries for BNPP transactions pertaining to various embargoed or sanctioned countries, including Sudan. This document includes, among other things, identifying information for each transaction, including relevant sanctioned country, dates of each transaction, amount of each transaction, and internal BNPP processing and payment information pertaining to each transaction. | WIF<br>49 pages | (b)(3)<br>(b)(4)<br>(b)(7)(A) | (b)(3): This document contains (or its disclosure would reveal) matters specifically exempted from release by statute (in this instance, Federal Rule of Criminal Procedure 6(e), which pertains to records regarding grand jury proceedings). Disclosure of this information would reveal, among other things, information concerning strategies behind grand jury investigations.<br><br>(b)(4): This document contains (or its disclosure would reveal) commercial or financial information obtained from BNPP that is privileged or confidential. BNPP customarily keeps such information private or closely held, DOJ provided an express or implied assurance of confidentiality to BNPP, and there were no express or implied indications at the time the record was submitted that DOJ would publicly disclose the information.<br><br>(b)(7)(A): This document contains (or its disclosure would reveal) information compiled for law enforcement purposes the release of which could reasonably be expected to interfere with enforcement proceedings. |

|  | Emails |  |  |  |
|---|---|---|---|---|
|  |  |  |  |  |
| **CRM-03** | Emails including BNPP personnel, as well as outside counsel, that are marked FOIA/FOIL confidential.  These emails pertain to, among other things, explanatory information regarding U.S. financial embargoes and sanctions, legal advice to BNPP regarding compliance with U.S. sanctions programs, including Sudan, BNPP general transaction and personnel policies regarding compliance with U.S. sanctions, specific policies pertaining to individual countries, including Sudan, meeting notes, discussions regarding business scenarios (transactions) in relation to U.S. sanctions programs, and BNPP internal transaction processes.<br><br>These documents contain the names and identifying information of BNPP personnel, as well as identifying information of outside counsel hired by BNPP. | WIF 118 pages | (b)(3)<br>(b)(4)<br>(b)(6)<br>(b)(7)(A)<br>(b)(7)(C) | (b)(3):  These documents contain (or their disclosure would reveal) matters specifically exempted from release by statute (in this instance, Federal Rule of Criminal Procedure 6(e), which pertains to records regarding grand jury proceedings).  Disclosure of this information would reveal, among other things, information concerning strategies behind grand jury investigations.<br><br>(b)(4): These documents contain (or their disclosure would reveal) commercial or financial information obtained from BNPP that is privileged or confidential.  BNPP customarily keeps such information private or closely held, DOJ provided an express or implied assurance of confidentiality to BNPP, and there were no express or implied indications at the time these records were submitted that DOJ would publicly disclose the information.<br><br>(b)(6) & (7)(C): These documents contain personal information concerning private individuals whose release could reasonably be expected to "constitute an unwarranted invasion of personal privacy."  The mention of a private individual's name in a law enforcement file engenders comment and speculation and could produce an unfair stigma which could expose the individual to |

| | | | | |
|---|---|---|---|---|
| | | | | harassment or criticism.  The individuals' substantial privacy interests outweigh any purported public interest in disclosure in these circumstances.<br><br>(b)(7)(A): These documents contain (or their disclosure would reveal) information compiled for law enforcement purposes the release of which could reasonably be expected to interfere with enforcement proceedings. |
| | **Document Production Indices** | | | |
| | | | | |
| **CRM-04** | Indices of BNPP records submitted by outside counsel for BNPP marked as FOIA/ FOIL confidential.  These records were part of an internal review of BNPP's compliance with U.S. sanctions laws and financial embargoes against countries, including Sudan.  These indices reference various administrative and compliance documents pertaining to BNPP's policies for embargoed countries generally, as well as country-specific policies, including Sudan.  The indices also detail, among other things, BNPP transactional process policies, memoranda regarding overviews of financial embargoes and sanctions, emails pertaining to specific transactions, memoranda pertaining to BNPP business scenarios that may be impacted by U.S. financially embargoed or sanctioned countries, | WIF 434 pages | (b)(3) (b)(4) (b)(7)(A) | (b)(3):  These documents contain (or their disclosure would reveal) matters specifically exempted from release by statute (in this instance, Federal Rule of Criminal Procedure 6(e), which pertains to records regarding grand jury proceedings).  Disclosure of this information would reveal, among other things, information concerning strategies behind grand jury investigations.<br><br>(b)(4): These documents contain (or their disclosure would reveal) commercial or financial information obtained from BNPP that is privileged or confidential.  BNPP customarily keeps such information private or closely held, DOJ provided an express or implied assurance of confidentiality to BNPP, and there were no express or implied indications at the time these records were |

| | | | | |
|---|---|---|---|---|
| | including Sudan, and documents containing internal BNPP transactional information. | | | submitted that DOJ would publicly disclose the information.<br><br>(b)(7)(A): These documents contain (or their disclosure would reveal) information compiled for law enforcement purposes the release of which could reasonably be expected to interfere with enforcement proceedings. |
| | **Presentation to Government** | | | |
| | | | | |
| **CRM-05** | Presentation to the U.S. Department of Justice and the New York County District Attorney's Office, prepared by outside counsel retained by BNPP, pertaining to the preliminary findings of an internal review of BNPP's compliance with U.S. sanctions laws, marked as FOIA/ FOIL confidential.<br><br>The presentation provides factual findings of outside counsel, in conjunction with forensic accountants, pertaining to BNPP compliance with U.S. embargoes and sanctions, including those imposed on Sudan.<br><br>Among other things, the presentation addresses steps undertaken to conduct the internal review, including evaluating BNPP's payment system and specific transactions, interviewing employees, analyzing documents provided to outside counsel by BNPP, as well as presenting outside counsel's conclusions following this review. | WIF 236 pages | (b)(3)<br>(b)(4)<br>(b)(7)(A) | (b)(3): This document contains (or its disclosure would reveal) matters specifically exempted from release by statute (in this instance, Federal Rule of Criminal Procedure 6(e), which pertains to records regarding grand jury proceedings). Disclosure of this information would reveal, among other things, information concerning strategies behind grand jury investigations.<br><br>(b)(4): This document contains (or its disclosure would reveal) commercial or financial information obtained from BNPP that is privileged or confidential. BNPP customarily keeps such information private or closely held, DOJ provided an express or implied assurance of confidentiality to BNPP, and there were no express or implied indications at the time the record was submitted that DOJ would publicly disclose the information. |

| | | | | |
|---|---|---|---|---|
| | | | | (b)(7)(A): This document contains (or its disclosure would reveal) information compiled for law enforcement purposes the release of which could reasonably be expected to interfere with enforcement proceedings. |
| | **Internal BNP Presentations** | | | |
| | | | | |
| CRM-06 | Presentations to BNPP, prepared by outside counsel for BNPP and BNPP employees, providing an overview of international financial embargoes and sanctions imposed by countries, including the United States, marked as FOIA/ FOIL confidential.<br><br>These presentations discuss, among other things, how sanctions and embargoes are enforced, BNPP transactions that are subject to sanctions and embargoes, and guidelines and instructions for BNPP to comply with sanctions and embargoes imposed on countries, including those placed upon Sudan by the U.S. | WIF 52 pages | (b)(3)<br>(b)(4)<br>(b)(7)(A) | (b)(3): These documents contain (or their disclosure would reveal) matters specifically exempted from release by statute (in this instance, Federal Rule of Criminal Procedure 6(e), which pertains to records regarding grand jury proceedings). Disclosure of this information would reveal, among other things, information concerning strategies behind grand jury investigations.<br><br>(b)(4): These documents contain (or their disclosure would reveal) commercial or financial information obtained from BNPP that is privileged or confidential. BNPP customarily keeps such information private or closely held, DOJ provided an express or implied assurance of confidentiality to BNPP, and there were no express or implied indications at the time the record was submitted that DOJ would publicly disclose the information.<br><br>(b)(7)(A): These documents contain (or their disclosure would reveal) information compiled for law enforcement purposes the release of |

| | | | | which could reasonably be expected to interfere with enforcement proceedings. |
|---|---|---|---|---|
| | **Compliance Memoranda** | | | |
| | | | | |
| **CRM-07** | Compliance memoranda authored by BNPP employees regarding BNPP's compliance with international financial embargoes and sanctions, including U.S. sanctions pertaining to Sudan, marked as FOIA/ FOIL confidential.<br><br>Among other things, these memoranda provide overviews of U.S. financial embargoes and sanctions of countries, including Sudan, discuss how BNPP may comply with sanctions and financial embargoes in the course of business transactions, and provide instructions pertaining to processing transactions and utilizing internal BNPP payment systems in accordance with sanctions programs and embargoes.<br><br>These documents contain the names and identifying information of BNPP employees. | WIF<br>92 pages | (b)(4)<br>(b)(6)<br>(b)(7)(C) | (b)(4): These documents contain (or their disclosure would reveal) commercial or financial information obtained from BNPP that is privileged or confidential.  BNPP customarily keeps such information private or closely held, DOJ provided an express or implied assurance of confidentiality to BNPP, and there were no express or implied indications at the time the records were submitted that DOJ would publicly disclose the information.<br><br>(b)(6) & (7)(C): These documents contain personal information concerning private individuals whose release could reasonably be expected to "constitute an unwarranted invasion of personal privacy."  The mention of a private individual's name in a law enforcement file engenders comment and speculation and could produce an unfair stigma which could expose the individual to harassment or criticism. The individuals' substantial privacy interests outweigh any purported public interest in disclosure in these circumstances. |
| | | | | |

| | Advice Memoranda from Outside Counsel | | | |
|---|---|---|---|---|
| | | | | |
| **CRM-08** | Memoranda prepared for BNPP by outside counsel for BNPP regarding various legal issues arising in the context of embargoed and sanctioned countries with whom BNPP engaged in business, including Sudan, marked as FOIA/ FOIL confidential.

Among other things, the memoranda provide legal advice regarding requirements to adhere to U.S. financial embargoes and sanctions of countries, including Sudan, how such sanctions and embargoes impact BNPP business and transactions, and explain U.S. authority over foreign banks as it pertains to U.S.-imposed financial embargoes and sanctions programs.

These documents contain the names and identifying information of outside counsel hired by BNPP. | WIF
98 pages | (b)(4)
(b)(6)
(b)(7)(C) | (b)(4): These documents contain (or its disclosure would reveal) commercial or financial information obtained from BNPP that is privileged or confidential.  BNPP customarily keeps such information private or closely held, DOJ provided an express or implied assurance of confidentiality to BNPP, and there were no express or implied indications at the time the records were submitted that DOJ would publicly disclose the information.

(b)(6) & (7)(C): These documents contain personal information concerning private individuals whose release could reasonably be expected to "constitute an unwarranted invasion of personal privacy."  The mention of a private individual's name in a law enforcement file engenders comment and speculation and could produce an unfair stigma which could expose the individual to harassment or criticism. The individuals' substantial privacy interests outweigh any purported public interest in disclosure in these circumstances. |