**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOHNMARK MAJUC and JOSEPH JOK,

      Plaintiffs,

      v.

UNITED STATES DEPARTMENT OF
JUSTICE,

      Defendant.

No. 1:18-cv-00566-APM

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

PROCEDURAL BACKGROUND ......................................................................................2

LEGAL STANDARD ...........................................................................................................3

ARGUMENT ..........................................................................................................................4

I.   The *Vaughn* Index and supporting documentation are too conclusory to permit Plaintiffs to contest—and the Court to review—the asserted withholdings. ....................................5

   A.   The categorical *Vaughn* Index is devoid of detail permitting challenge and review. .....5

   B.   The O'Keefe Declaration appears based on neither personal knowledge nor expert opinion and lacks detail permitting challenge and review. ..............................................9

II.   At least some of the withheld records must be released under the public domain doctrine. .......................................................................................................................11

III.  The government has failed its burden to show that no information can be segregated.....14

IV.  DOJ seeks to shield criminal financial conduct—which DOJ has already publicized— under Exemption 4, without demonstrating its commercial and confidential nature. .......15

   A.   Intrinsically illegal conduct is not commercial and FOIA does not protect a company's competitive advantage in profiting from crime.......................................................17

   B.   DOJ fails to substantiate commerciality and confidentiality.........................................20

   C.   Outdated information with no meaningful commercial consequences is not exempt...21

   D.   Inherently public and noncommercial information cannot be exempted. .....................22

V.   DOJ fails to demonstrate how disclosure of a convicted criminal defendant's documents would elucidate the inner workings of the grand jury, as required by Exemption 3.........23

VI.  The 6 and 7(C) privacy exemptions do not apply: the public has a compelling interest in understanding whether the government's plea deal is an adequate sanction and deterrent, while BNPP's staff and attorneys have minimal or no privacy interests. ........................25

   A.   The balancing test between personal privacy and public interest is nearly identical for Exemptions 6 and 7(C). ..............................................................................................25

   B.   Public interest in accountability outweighs individual interests in concealing business activities that were already subject to criminal conviction and are, in large part, already public...............................................................................................................................26

     1.   Certain information is already public. ...................................................................27

     2.   The public interest is compelling and the alleged privacy interests are insufficient.28

        a.   The public interest is overwhelming. ..........................................................28

        b.   The alleged privacy interest at stake is insufficient.............................................31

        c.   Redacted documents can be produced.................................................................33

VII. As this Court already concluded, Exemption 7(A) cannot apply when the investigation

has concluded and any statute of limitations has run. ........................................................34

CONCLUSION ...........................................................................................................................37

## **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*ACLU v. U.S. Dep't of Just.*,
   655 F.3d 1 (D.C. Cir. 2011)................................................................................26, 29

*Adionser v. Dep't of Just.*,
   811 F. Supp. 2d 284 (D.D.C. 2011)....................................................................6, 7

*Akers v. Liberty Mut. Grp.*,
   744 F. Supp. 2d 92 (D.D.C. 2010)......................................................................10

*Al-Fayed v. C.I.A.*,
   254 F.3d 300 (D.C. Cir. 2001)..............................................................................4

*Archibald v. U.S. Dep't of Just.*,
   950 F. Supp. 2d 80 (D.D.C. 2013).......................................................................27

*Bartko v. U.S. Dep't of Just.*,
   898 F.3d 51 (D.C. Cir. 2018)...............................................................................30

*Beck v. Dep't of Just.*,
   997 F.2d 1489 (D.C. Cir. 1993)...........................................................................31

*Bennett v. Drug Enf't Admin.*,
   55 F. Supp. 2d 36 (D.D.C. 1999).........................................................................33

*Besson v. U.S. Dep't of Com.*,
   480 F. Supp. 3d 105 (D.D.C. 2020).............................................................*passim*

*Bigwood v. U.S. Agency for Int'l Dev.*,
   484 F. Supp. 2d 68 (D.D.C. 2007).................................................................26, 28

*Braun v. U.S. Postal Serv.*,
   317 F. Supp. 3d 540 (D.D.C. 2018)......................................................................34

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................................................4

*Church of Scientology of Cal., Inc. v. Turner*,
   662 F.2d 784 (D.C. Cir. 1980).............................................................................31

*Church of Scientology, Int'l v. U.S. Dep't of Just.*,
   30 F.3d 224 (1st Cir. 1994) ...........................................................................23, 24

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
   746 F.3d 1082 (D.C. Cir. 2014)...................................................................*passim*

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
   854 F.3d 675 (D.C. Cir. 2017)....................................................................3

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
   955 F. Supp. 2d 4 (D.D.C. 2013)................................................6, 11, 24

*Cohen v. E.P.A.*,
   575 F. Supp. 425 (D.D.C. 1983).............................................................32

*Columbia Packing Co. v. U.S. Dep't of Agric.*,
   563 F.2d 495 (1st Cir. 1977) ..................................................................33

*Common Cause v. Nat'l Archives & Recs. Serv.*,
   628 F.2d 179 (D.C. Cir. 1980)................................................................32

*Cooper v. U.S. Dep't of Just.*,
   169 F. Supp. 3d 20 (D.D.C. 2016)..........................................................34

*Cottone v. Reno*,
   193 F.3d 550 (D.C. Cir. 1999)................................................................27

*Ctr. for Auto Safety v. U.S. Dep't of Treasury*,
   133 F. Supp. 3d 109 (D.D.C. 2015).............................................5, 7, 8, 21

*Ctr. for Biological Diversity v. EPA*,
   279 F. Supp. 3d 121 (D.D.C. 2017).........................................................15

*Ctr. for Pub. Integrity v. U.S. Dep't of Com.*,
   401 F. Supp. 3d 108 (D.D.C. 2019)...................................................*passim*

*Ctr. for Pub. Integrity v. U.S. Dep't of Def.*,
   No. 19-cv-3265 (CKK), 2020 WL 4530596 (D.D.C. Aug. 6, 2020) ...............10, 17

*Ctr. for Pub. Integrity v. U.S. Dep't of Energy*,
   234 F. Supp. 3d 65 (D.D.C. 2017).................................................10, 17, 19

*Ctr. for Pub. Integrity v. U.S. Dep't of Energy*,
   287 F. Supp. 3d 50 (D.D.C. 2018)...........................................................11

*Cuban v. Sec. & Exch. Comm'n*,
   744 F. Supp. 2d 60 (D.D.C. 2010)............................................................4

*Cuneo v. Schlesinger*,
   484 F.2d 1086 (D.C. Cir. 1973)................................................................7

*Davidson v. U.S. Dep't of State*,
   206 F. Supp. 3d 178 (D.D.C. 2016)...........................................................5

*Davis v. U.S. Dep't of Just.*,
   968 F.2d 1276 (D.C. Cir. 1992)..................................................................26, 28

*Defs. of Wildlife v. U.S. Dep't of Agric.*,
   311 F. Supp. 2d 44 (D.D.C. 2004)......................................................................8

*Dep't of Air Force v. Rose*,
   425 U.S. 352 (1976) ..........................................................................................3

*Diamond v. Atwood*,
   43 F.3d 1538 (D.C. Cir. 1995)............................................................................4

*EPIC v. Dep't of Homeland Sec.*,
   384 F. Supp. 2d 100 (D.D.C. 2005).....................................................................4

*Ferring Pharm., Inc. v. Azar*,
   296 F. Supp. 3d 166 (D.D.C. 2018)...................................................................34

*Food Mktg. Inst. v. Argus Leader Media*,
   139 S. Ct. 2356 (2019) .............................................................................15, 22

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ..........................................................................................3

*Johnson v. Exec. Off. for U.S. Att'ys*,
   310 F.3d 771 (D.C. Cir. 2002)............................................................................7

*Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
   No. 19-cv-00876 (TNM), 2021 WL 930350 (D.D.C. Mar. 11, 2021) .....................11, 17, 18

*Senate of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Just.*,
   823 F.2d 574 (D.C. Cir. 1987)..........................................................................24

*Kashef v. BNP Paribas, S.A.*,
   No. 16-cv-3228 (AJN) (S.D.N.Y.) .......................................................................2

*King & Spalding, LLP v. U.S. Dep't of Health & Hum. Servs.*,
   395 F. Supp. 3d 116 (D.D.C. 2019)...................................................................31

*King v. U.S. Dep't of Justice*,
   830 F.2d 210 (D.C. Cir. 1987)........................................................................4, 8

*LaShawn A. v. Barry*,
   87 F.3d 1389 (D.C. Cir. 1996) (en banc)............................................................34

*Lepelletier v. F.D.I.C.*,
   164 F.3d 37 (D.C. Cir. 1999)...........................................................................26

*Lissner v. U.S. Customs Serv.*,
  241 F.3d 1220 (9th Cir. 2001) ........................................................................... 33

*Lopez v. U.S. Dep't of Just.*,
  393 F.3d 1345 (D.C. Cir. 2005) ................................................................... 23, 24

*Majuc v. U.S. Dep't of Just.*,
  No. 18-cv-00566 (APM), 2019 WL 4394843 (D.D.C. Sept. 13, 2019) ....................... *passim*

*McKinley v. Bd. of Governors of Fed. Rsrv. Sys.*,
  849 F. Supp. 2d 47 (D.D.C. 2012) ....................................................................... 11

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ........................................................................... 15

*Moore v. Bush*,
  601 F. Supp. 2d 6 (D.D.C. 2009) ......................................................................... 34

*Nat'l Ass'n of Home Builders v. Norton*,
  309 F.3d 26 (D.C. Cir. 2002) ............................................................................... 3

*Nat'l Whistleblower Ctr. v. Dep't of Health & Hum. Servs.*,
  849 F. Supp. 2d 13 (D.D.C. 2012) ......................................................................... 4

*Nation Mag. v. U.S. Customs Serv.*,
  71 F.3d 885 (D.C.Cir. 1995) ............................................................................... 33

*Nat'l Parks & Conservation Ass'n v. Morton*,
  498 F.2d 765 (D.C. Cir. 1974) ........................................................................... 15

*Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*,
  169 F.3d 16 (D.C. Cir. 1999) ............................................................................... 4

*Pinson v. U.S. Dep't of Just.*,
  243 F. Supp. 3d 74 (D.D.C. 2017) ....................................................................... 34

*Plunkett v. Dep't of Just.*,
  202 F. Supp. 3d 59 (D.D.C. 2016) ....................................................................... 34

*Pub. Citizen, Inc. v. OMB*,
  598 F.3d 865 (D.C. Cir. 2010) ........................................................................... 17

*Pub. Citizen v. HHS*,
  975 F. Supp. 2d 81 (D.D.C. 2013) ....................................................................... 23

*Roth v. U.S. Dep't of Just.*,
  642 F.3d 1161 (D.C. Cir. 2011) ......................................................................... 26

*Rural Hous. Alliance v. U.S. Dep't of Agric.*,
    498 F.2d 73 (D.C. Cir. 1974) ................................................................. 32

*Solers, Inc. v. Internal Revenue Serv.*,
    827 F.3d 323 (4th Cir. 2016) ................................................................. 34

*Stotter v. U.S. Agency for Int'l Dev.*,
    No. 14-cv-2156 (KBJ), 2020 WL 5878033 (D.D.C. Oct. 3, 2020) ................ 15

*U.S. Dep't of Def. v. FLRA*,
    510 U.S. 487 (1994) .............................................................................. 3

*U.S. Dep't of Just. v. Reporters Comm. for Freedom of Press*,
    489 U.S. 749 (1989) ............................................................................. 31

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973) ........................................................ *passim*

*Voinche v. Fed. Bureau of Investigation*,
    46 F. Supp. 2d 26 (D.D.C. 1999) ............................................................ 4

*VoteHemp, Inc. v. Drug Enf't Admin.*,
    567 F. Supp. 2d 1 (D.D.C. 2004) .......................................................... 34

*Wash. Post Co. v. U.S. Dep't of Just.*,
    863 F.2d 96 (D.C. Cir. 1988) ................................................................ 32

*Wellford v. Hardin*,
    315 F. Supp. 768 (D.D.C. 1970) ..................................................... 15, 34

*White Coat Waste Project v. U.S. Dep't of Veterans Affs.*,
    404 F. Supp. 3d 87 (D.D.C. 2019) ........................................................ 10

*WP Co. LLC v. U.S. Small Bus. Admin.*,
    No. 20-cv-1240 (JEB), 2020 WL 6504534 (D.D.C. Nov. 5, 2020) ........ 16, 17

**Rules and Statutes**

Freedom of Information Act, 5 U.S.C. § 552 ........................................ *passim*

Federal Rule of Civil Procedure 56 ................................................... 4, 10

Federal Rule of Criminal Procedure 6(e) ......................................... 23, 24

**Other Authorities**

DEALBOOK, June 5, 2014, https://dealbook.nytimes.com/2014/06/05/bnp-
    executive-asked-to-leave-amid-investigation/.........................................................27

DOJ Press Release: BNP Paribas Agrees to Plead Guilty and to Pay $8.9 Billion
    for Illegally Processing Financial Transactions for Countries Subject to U.S.
    Economic Sanctions (June 30, 2014) .................................................................1, 16

Global Witness, *Banks and Dirty Money: How the Financial System Enables
    State Looting at a Devastating Human Cost* (Oct. 2015)......................................29

Jessica Silver-Greenberg & Ben Protess, *BNP Paribas Executive May Leave in
    Deal with Regulator*, DEALBOOK, June 5, 2014 ....................................................27

Joseph Ax, et al., *U.S. Imposes Record Fine on BNP in Sanctions Warning to
    Banks*, REUTERS, June 30, 2014 .......................................................................27, 28

Michael Stothard, et al., *BNP Top Executive Chodron de Courcel to Retire Amid
    US Probe*, FINANCIAL TIMES, June 12, 2014..........................................................28

Press Release, *BNP Paribas Bank Pleads Guilty, Pays $8.83 Billion in Penalties
    for Illegal Transactions* (June 30, 2014) ..............................................................28

## INTRODUCTION

The U.S. Department of Justice ("DOJ") investigated, prosecuted and convicted BNP Paribas, S.A. and its affiliates (collectively, "BNPP" or "the Bank") for conspiring to violate U.S. sanctions against Sudan, Iran, and Cuba. *See* Ex. 1; Ex. 2.[1] BNPP pled guilty in state court to conspiracy and falsifying business records. *See* Ex. 4. Further, BNPP agreed to Cease & Desist Orders with the Federal Reserve, a settlement agreement with the U.S. Department of the Treasury ("Treasury Settlement"), and a consent order with the New York State Department of Financial Services. *See* Ex. 5; Ex. 6; Ex. 7; Ex. 8. When the DOJ announced the guilty pleas, it stated: "BNPP banked on never being held to account for its criminal support of countries and entities engaged in acts of terrorism and other atrocities," "[b]ut that is exactly what we do today."[2] That same Justice Department now seeks to shield from public disclosure any documents related to the criminal investigation and prosecution of BNPP that ended with conviction six years ago.

DOJ may not shield these records because it has failed its burden to show that they fall within any exemption to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The *Vaughn* Index and Declaration DOJ offers are fatally deficient—impermissibly vague, unspecific, and conclusory, such that Plaintiffs cannot meaningfully challenge DOJ's assertions. This is itself a basis for denying summary judgment. There is also substantial information from the records in the public domain, rendering FOIA exemptions inapplicable, which DOJ does not address. Even if an

---

[1] All citations to exhibits are Exhibits to the Declaration of Shira Lauren Feldman unless otherwise indicated.

[2] DOJ Press Release: BNP Paribas Agrees to Plead Guilty and to Pay $8.9 Billion for Illegally Processing Financial Transactions for Countries Subject to U.S. Economic Sanctions (June 30, 2014), https://www.justice.gov/opa/pr/bnp-paribas-agrees-plead-guilty-and-pay-89-billion-illegally-processing-financial.

exemption were to apply, DOJ makes no effort to demonstrate that there is no segregable information, as it is required to do.

Finally, DOJ fails to meet the requirements of the specific exemptions it invokes. It does not show that the information is commercial and confidential, as required by Exemption 4. It does not show that disclosure would reveal grand jury strategy, as required by Exemption 3. It cannot defeat the overwhelming public interest, as required by Exemptions 6 and 7(C). It ignores the Court's previous decision on Exemption 7(A) and provides no basis to conclude that the records relate to ongoing law enforcement investigations, as is required by that exemption.

DOJ has spent over four years stonewalling Plaintiffs[3] to protect from public disclosure information related to the prosecution of the Bank. As shown herein, genuine issues of material fact exist for all of the exemptions DOJ invokes; summary judgment should be denied, and DOJ should be ordered to start disclosing documents as requested and as required under FOIA.[4]

## PROCEDURAL BACKGROUND

Plaintiffs JohnMark Majuc and Joseph Jok submitted a FOIA request to DOJ on November 17, 2016. O'Keefe Decl. ¶ 6. After six weeks, DOJ acknowledged the request. *Id.* ¶ 8. After another month, DOJ sent a search request to the DOJ's Criminal Division Money Laundering and Asset Recovery Section, which led DOJ's investigation and prosecution of BNPP. *Id.* ¶ 9. After another 15 weeks, DOJ formally refused to disclose any documents. *Id.* ¶ 10.

---

[3] Plaintiffs are members of the putative class of BNPP victims in *Kashef v. BNP Paribas, S.A.*, No. 16-cv-3228 (AJN) (S.D.N.Y.). On February 16, 2021, the Honorable Alison J. Nathan denied the Bank's motion to dismiss as to all contested claims. *See id.*, 2021 WL 603290 (S.D.N.Y. Feb. 16, 2021).

[4] The adequacy of DOJ's searches is not at issue at this time, but Plaintiffs reserve the right to contest them.

Plaintiffs filed an administrative appeal. *Id.* ¶ 11. DOJ denied the appeal at the end of August 2017. *Id.* ¶ 12. Plaintiffs then filed this lawsuit, *see* Compl., ECF No. 1, and in September 2019, this Court denied the parties' cross-motions for summary judgment. *See Majuc v. U.S. Dep't of Just.*, No. 18-cv-00566 (APM), 2019 WL 4394843, at *4 (D.D.C. Sept. 13, 2019).

Since that time, Plaintiffs have conferred repeatedly with DOJ, all to no avail. Most recently, DOJ has issued an interim response in which it continues to withhold all documents in full, and Plaintiffs sought relief from the Court. *See* ECF No. 62. Plaintiffs now oppose DOJ's second motion for summary judgment.[5]

## LEGAL STANDARD

The Freedom of Information Act reflects "a general philosophy of full agency disclosure." *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 494 (1994) (citation omitted). Its purpose is to "ensure an informed citizenry, vital to the functioning of a democratic society." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted). "FOIA mandates a strong presumption in favor of disclosure." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quotation and citation omitted). Its exemptions are to be construed "narrowly." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).

In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA and that the agency has adequately segregated exempt materials from non-exempt

---

[5] To the extent that DOJ now asserts exemptions not previously asserted, it has waived the right to do so. *See Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 854 F.3d 675, 679 (D.C. Cir. 2017) ("*CREW III*").

ones. 5 U.S.C. § 552(a)(4)(8); *see, e.g.*, *Al-Fayed v. C.I.A.*, 254 F.3d 300, 305 (D.C. Cir. 2001); *EPIC v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 106 (D.D.C. 2005).

*De novo* review applies. 5 U.S.C. § 552(a)(4)(B). An agency may meet its burden by providing the FOIA requester with a *Vaughn* Index, adequately describing each withheld document and explaining the reason for the withholding. *See King v. U.S. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987); *see generally Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). An agency's failure to justify its decision to withhold through its *Vaughn* Index and affidavits compels disclosure. *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 18 (D.C. Cir. 1999) (finding agency affidavits conclusory and denying summary judgment); *Voinche v. Fed. Bureau of Investigation*, 46 F. Supp. 2d 26, 30 (D.D.C. 1999) (denying summary judgment when agency provided conclusory affidavit to support invocation of Exemption 7(A)).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). The Court must draw "'all justifiable inferences' in favor of the non-moving party and accept the non-moving party's evidence as true." *Cuban v. Sec. & Exch. Comm'n*, 744 F. Supp. 2d 60, 69 (D.D.C. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Nat'l Whistleblower Ctr. v. Dep't of Health & Hum. Servs.*, 849 F. Supp. 2d 13, 21 (D.D.C. 2012) (citing *Celotex Corp.*, 477 U.S. at 322).

## ARGUMENT

Summary judgment should be denied because DOJ's *Vaughn* Index and Declaration are

deficient; information it is withholding is already in the public domain, such that no FOIA exemption can apply; any exempt information can be segregated from non-exempt information; and it has failed its burden with respect to the specific exemptions it invokes.

## I. The *Vaughn* Index and supporting documentation are too conclusory to permit Plaintiffs to contest—and the Court to review—the asserted withholdings.

DOJ failed to provide a *Vaughn* Index that meets the criteria required in this Circuit. The *Vaughn* Index does not provide a description of each record; does not provide meaningful definitions of the categories it uses; does not explain how any particular exemption applies to any specific record; and does not address segregability. It thus does not serve the fundamental purpose of a *Vaughn* Index, because it does not enable a requester to frame a challenge and does not enable the Court to conduct its *de novo* review. The Declaration from Courtney J. O'Keefe accompanying the *Vaughn* Index is conclusory and lacks evidentiary foundation for key factual claims. For this reason alone, summary judgment should be denied as to *all* exemptions.

### A. The categorical *Vaughn* Index is devoid of detail permitting challenge and review.

"No set formula exists for a *Vaughn* index," but if it "does not provide the Court with a description of each of the responsive records" then the "*Vaughn* index is deficient in a critical way." *Davidson v. U.S. Dep't of State*, 206 F. Supp. 3d 178, 193 (D.D.C. 2016). Its purpose, together with an agency declaration, is to enable the requester to challenge a withholding of information and the court to properly conduct the *de novo* review that FOIA requires.

> [A]n agency must submit sufficiently detailed affidavits or declarations, a *Vaughn* Index of the withheld documents, or both, to demonstrate that the government has analyzed carefully any material withheld, to enable the court to fulfill its duty of ruling on the applicability of the exemption, and to enable the adversary system to operate by giving the requester as much information as possible, on the basis of which the requester's case may be presented to the trial court.

*Ctr. for Auto Safety v. U.S. Dep't of Treasury*, 133 F. Supp. 3d 109, 116 (D.D.C. 2015) (citing

*Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996)).

Courts in this Circuit have identified various elements which, in their totality, could render a *Vaughn* Index sufficiently detailed to enable challenge and judicial review:

> (1) an index identification number (*i.e.*, a Bates stamp number); (2) the document's subject; (3) its date; (4) the author; (5) the recipient; (6) the total number of pages; (7) the disposition (that is, whether entirely or partially withheld); (8) the reason for being withheld; (9) the statutory authority for the withholding; and (10) the number of pages containing withheld information.

*Ctr. for Pub. Integrity v. U.S. Dep't of Com.*, 401 F. Supp. 3d 108, 119 (D.D.C. 2019) (quotation and alteration omitted). The "description" of each document should be "detailed." *Adionser v. Dep't of Just.*, 811 F. Supp. 2d 284, 292-93 (D.D.C. 2011).

The *Vaughn* Index presented by DOJ recites broad categories of withheld information, rather than a document-by-document justification for withholding. While a categorical index is not barred *per se*, it is only permissible when it satisfies two requirements. *First*, "the range of circumstances included in the category [must] 'characteristically support[] an inference' that the statutory requirements for exemption are satisfied." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088-89 (D.C. Cir. 2014) ("*CREW II*"). *Second*, a categorical *Vaughn* Index must "provide the Court and the requester with an equally strong basis [as a document-by-document index] for evaluating the agency's exemption claims in detail." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 955 F. Supp. 2d 4, 14 (D.D.C. 2013) ("*CREW I*").

DOJ's categories are—on their face—impermissibly overinclusive, their vagueness and overbreadth clear from the category titles. DOJ groups the entire tranche of documents into eight non-specific categories: "Interview Summary Memoranda," O'Keefe Decl., Ex. H at 1 (the "*Vaughn* Index"); "BNPP Transactional Data Chart," *id*. at 3; "Emails," *id*. at 4; "Document

Production Indices," *id*. at 5; "Presentation to Government," *id*. at 6; "Internal BNP Presentations," *id*. at 7; "Compliance Memoranda," *id*. at 8; and "Advice Memoranda from Outside Counsel." *Id*. at 9. These cryptic categories, in turn, feature vague descriptions of withheld documents such as "meeting notes" (the subject matter unspecified) and "interactions with BNPP personnel and compliance departments." They also impermissibly lump together information. *See Ctr. for Auto Safety*, 133 F. Supp. 3d at 122. For example, "CRM-03" consists of an unstated number of emails amounting to 118 pages. *Vaughn* Index at 4.

Moreover, the descriptions of each category do little more than echo the language of FOIA's exemptions in conclusory fashion. Further, the Index lacks both substantive detail and the metadata typically included in a comprehensive *Vaughn* Index, such as Bates numbers, dates, authors, and recipients. *See Adionser*, 811 F. Supp. 2d at 292-93. A *Vaughn* Index "must adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002). It must provide "particularized and specific justification for exempting information from disclosure[, which] must not consist of conclusory and generalized allegations of exemptions." *Cuneo v. Schlesinger*, 484 F.2d 1086, 1092 (D.C. Cir. 1973) (quotation and citations omitted). Here, Plaintiffs and the Court have no way of knowing whether the withheld documents include documents not covered by an exemption, since key details are lacking.

DOJ asserts that "the records subject to this briefing do not include records referenced in the statement of facts entered by the parties in *U.S. v. BNP Paribas S.A.*, Crim No. 14-00460-LGS-1 (S.D.N.Y.), ECF No. 13-2," that is, the stipulated statement of facts that accompanied BNPP's federal guilty plea ("SSOF"). Mem. of Points & Auths. in Support of Def.'s Mot. for Summ. J. ("Def.'s Mem.") at 18 n.11. Yet DOJ describes CRM-07 as including "[c]ompliance memoranda

authored by BNPP employees regarding BNPP's compliance with international financial embargoes and sanctions." *See Vaughn* Index at 8. The SSOF expressly refers to and even quotes from memoranda prepared by several BNPP compliance officers that clearly address BNPP's conduct with respect to such sanctions and embargoes. *See, e.g.*, Ex. 3 ¶¶ 20, 26, 31, 39. Similarly, CRM-03 is described as "Emails" that are said to "pertain to" several issues including

> explanatory information regarding U.S. financial embargoes and sanctions, legal advice to BNPP regarding compliance with U.S. sanctions programs, including Sudan, BNPP general transaction and personnel policies regarding compliance with U.S. sanctions, specific policies pertaining to individual countries, including Sudan, meeting notes, discussions regarding business scenarios (transactions) in relation to U.S. sanctions programs, and BNPP internal transaction processes.

*See Vaughn* Index at 4. The SSOF refers to and quotes directly from emails that appear to fall into one or more the above categories. *See, e.g.*, Ex. 3 ¶¶ 20, 25, 30, 32, 33, 37, 39, 54, 58. If the information in the records is already in the public domain, FOIA exemptions do not apply. *See infra*, Section II. Because of the *Vaughn* Index's overbreadth and vagueness, however, Plaintiffs have no "meaningful opportunity to contest . . . the soundness of the withholding." *Defs. of Wildlife v. U.S. Dep't of Agric.*, 311 F. Supp. 2d 44, 56 (D.D.C. 2004); *see King*, 830 F.2d at 218.

As to segregability, a *Vaughn* Index must indicate "that all reasonably segregable information" was "released for *each* document" and the agency declaration must not contain "conclusory assertions to justify withholding information." *Ctr. for Pub. Integrity v. U.S. Dep't of Com.*, 401 F. Supp. 3d at 118. The *Vaughn* Index fails in this regard as well. "[T]o the extent that the defendants' declarations or *Vaughn* indices indicate that documents could belong in multiple categories, the indices generally fail to address the segregability of any properly withheld information from releasable information." *Ctr. for Auto Safety*, 133 F. Supp. 3d at 122. Thus, the Court cannot "evaluate," as it must, "whether any non-exempt portions are inextricably intertwined with exempt portions." *Ctr. for Pub. Integrity v. U.S. Dep't of Com.*, 401 F. Supp. 3d at 118.

DOJ's *Vaughn* Index cannot serve the purpose for which it was provided:  to "afford the plaintiff a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Id.* at 119 (quotation and alteration omitted). Therefore, summary judgment should be denied.

### B. The O'Keefe Declaration appears based on neither personal knowledge nor expert opinion and lacks detail permitting challenge and review.

Accompanying the deficient *Vaughn* Index is a deficient Declaration from Courtney J. O'Keefe, an attorney in the Freedom of Information Act/Privacy Act Unit in the Office of Enforcement Operations in the Criminal Division of DOJ. The O'Keefe Declaration does not cure the Index's vagueness for two reasons: not only is it conclusory and short on detail, it lacks an evidentiary foundation for key factual assertions.

The O'Keefe Declaration is largely boilerplate, reciting the statutory standards. *See, e.g.*, O'Keefe Decl. ¶ 29 ("This information is 'commercial' within the meaning of Exemption 4, because it serves a commercial function and is of a commercial nature in that it is helpful or instrumental to BNPP's business interests and operations"); *id.* ¶ 34 ("All of the information contained in these records is protected in full as confidential commercial information because it is reasonably foreseen that disclosure of these records would harm the interests protected by the provisions of Exemption 4"); *id.* ¶ 41 (DOJ "determined that the privacy interests were not outweighed by any FOIA public interest in disclosure of that information, and it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision of the FOIA"); *id.* ¶ 48 (DOJ "determined that any release of the records described . . . would be premature and likely cause harm to both continuing and pending law enforcement proceedings").

As this Court has held, reciting the statutory standards is not enough. "The agency's affidavits or declarations must 'describe the documents and the justifications for nondisclosure

with reasonably specific detail.'" *Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, 234 F. Supp. 3d 65, 73 (D.D.C. 2017) (Mehta, D.J.). "The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, No. 19-cv-3265 (CKK), 2020 WL 4530596, at *2 (D.D.C. Aug. 6, 2020) (finding declarations and *Vaughn* Index insufficient).

Vagueness and overbreadth are not the only problems, as the Declaration lacks an evidentiary foundation. "At the summary judgment stage, 'supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Akers v. Liberty Mut. Grp.*, 744 F. Supp. 2d 92, 95-96 (D.D.C. 2010) (quoting *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (quoting Fed. R. Civ. P. 56(e))). "The [c]ourt cannot rely on declarations that are reduced to speculation and summary accounts of hearsay." *White Coat Waste Project v. U.S. Dep't of Veterans Affs.*, 404 F. Supp. 3d 87, 105 (D.D.C. 2019) (alteration and quotation omitted).

 DOJ submits no evidence from BNPP to support any of the claims about BNPP's documents—or BNPP's interest in those documents. Instead, the O'Keefe Declaration purports to describe BNPP's commercial interest in the information DOJ refuses to disclose on the basis of Ms. O'Keefe's opinion alone. *See, e.g.*, O'Keefe Decl. ¶ 29 (the information "is helpful or instrumental to BNPP's business interests and operations), *id.* ¶ 30 ("BNPP would not customarily release this information publicly"), *id.* ¶ 32 ("Release of these documents would likely cause BNPP, as well as their affiliated business and financial entities, substantial competitive harm").

DOJ fails to establish that Ms. O'Keefe has any personal knowledge of BNPP's commercial interests and fails to demonstrate why Ms. O'Keefe—an attorney in a FOIA unit—

would have any expertise to opine on such matters. Without that foundation, Ms. O'Keefe's speculations have no probative value. *See Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. 19-cv-00876 (TNM), 2021 WL 930350, at *4 (D.D.C. Mar. 11, 2021) ("If speculation sufficed, this litany would be fine. But the supplemental declaration . . . appears not to rely on actual concerns raised by [the company] at all.")

In short, the categorical *Vaughn* Index is impermissibly vague, overbroad, and conclusory, as is the O'Keefe Declaration, which moreover lacks an evidentiary foundation. Just as in *CREW I*, summary judgment should be denied—with respect to all exemptions. 955 F. Supp. 2d at 16.

## II.   At least some of the withheld records must be released under the public domain doctrine.

Despite the asserted exemptions, some of the records withheld by the DOJ must be released due to prior disclosure. "[A]n agency waives its right to claim a FOIA exemption for information that it has officially released in the public domain." *McKinley v. Bd. of Governors of Fed. Rsrv. Sys.*, 849 F. Supp. 2d 47, 59 (D.D.C. 2012). "Indeed, a court may compel disclosure even over an agency's otherwise valid exemption claim when information has been officially acknowledged through prior disclosure." *Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, 287 F. Supp. 3d 50, 63 (D.D.C. 2018) (quotation marks omitted). "This exception reflects the commonsense intuition that an open secret is no secret at all." *Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 2021 WL 930350, at *6. "The public-domain doctrine does not require the Court to favor form over substance. Binding caselaw shows that the relevant inquiry is whether the *information* is in the public domain, not whether it is also in precisely the same *form*." *Id.* at *10 (emphasis in original). "[Courts] do not require a plaintiff to produce an exact copy of the redacted information, in the same form, to meet that burden of production." *Id*.

As this Court previously observed,

> the factual proffer supporting BNPP's plea contains significant details about the time, manner, and means of the bank's violations. It quotes extensively from BNPP's internal emails and corporate records and highlights specific activities of BNPP officials at the center of the scheme. The DOJ does not acknowledge these detailed disclosures . . . .

*Majuc*, 2019 WL 4394843, at *4. "[I]t provides not only factual details about the scheme, time, place, events, but also very clearly identifies specific documents. I mean, it quotes directly from, I'm just guessing here, maybe close to a half dozen records." Sept. 26, 2019 Tr. (ECF No. 42), at 8:8-13.

The DOJ persists in its failure to address these records, which the Court found are clearly in the public domain, except, perplexingly, to now assert that those documents are not among the records that are the subject of this briefing. Def.'s Mem. at 18 n.11. Yet as the O'Keefe Declaration reflects, on February 10, 2020, Plaintiffs' counsel met with the FOIA/PA Unit and discussed DOJ's prioritizing certain categories of documents for processing, which DOJ agreed to do. O'Keefe Decl. ¶ 18. Among those categories of documents were the documents referenced in the statement of facts to which BNPP stipulated when it pled guilty in federal court. *See* Feldman Decl. ¶¶ 4-6. DOJ has provided no explanation for why these documents—admittedly not subject to a FOIA exemption, and specifically prioritized for processing by Plaintiffs—have not been disclosed.

There are additional records that plainly contain information in the public domain. The *Vaughn* Index includes a category of "Advice Memoranda from Outside Counsel" that includes, *inter alia*, "legal advice regarding requirements to adhere to U.S. financial embargoes and sanctions of countries, including Sudan." *Vaughn* Index at 9. DOJ withholds these documents in full, yet the Settlement Agreement with Treasury, executed at the time of BNPP's guilty plea, states:

> [I]n September 2006, BNPP received a memorandum from a U.S. law firm that indicated that non-U.S. branches of non-U.S. banks appeared to be prohibited

from processing sanctions-related transactions through the United States. The same memorandum contained the following guidance, which appears to describe the potential implications of a non-U.S. bank attempting to shield its own U.S. branch from sanctions-related transactions:

> [W]here a transaction is a prohibited transaction because it is conducted through a bank in the U.S., albeit an unaffiliated bank, if the use of the unaffiliated bank were perceived to result from an effort by the foreign bank to avoid the involvement of its U.S. branch in handling prohibited transactions, there is a substantial risk either that regulators or prosecutors would attempt to make a case that the foreign bank is in some fashion a CACR or ITR Covered Person or that the foreign bank could be considered to be involved in an evasion of the OFAC sanctions. Evasions are specifically prohibited by the CACR sanctions as well as the ITR sanctions.

Ex. 7 ¶ 17. At minimum, no FOIA exemption can apply to this memorandum.

According to the *Vaughn* Index, the records also contain "knowledge of payment systems and processes within BNPP," *Vaughn* Index at 2, a "transactional data chart," *id*. at 3, "BNPP internal transaction processes," *id*. at 4, "BNPP transactional process policies," *id*. at 5, "emails pertaining to specific transactions," *id*., and "internal BNPP transactional information." *Id*. at 6. The Treasury Settlement provides specific detail about BNPP's transactional processes. As one example, the Settlement explains that BNPP

> utilized more transparent serial payment messages (such as SWIFT MT103 payment messages) on a more frequent basis for transactions involving non-sanctioned parties in certain business lines at certain BNPP locations. Conversely, a number of business lines at certain BNPP locations tended to utilize less transparent cover payment messages (such as SWIFT M202 payment messages) for transactions involving sanctioned parties.

Ex. 7 ¶ 5; *see also id.* ¶¶ 7-12, 16. The Settlement also gives specific dates, numbers, and dollar amounts for transactions, which thus cannot be subject to a FOIA exemption.  For example,

> From on or about September 6, 2005, to on or about July 25, 2009, BNPP processed 2,663 electronic funds transfers in the aggregate amount of $8,370,372,624 to or through financial institutions located in the United States in apparent violation of the prohibitions against (i) the exportation or reexportation of services from the United States to Sudan . . . and/or (ii) dealing in property and interests in property

13

of the Government of Sudan that "come within the United States."

*Id.* ¶ 18; *see also id.* ¶¶ 19-21. The *Vaughn* Index also refers to BNPP "procedures," but the Treasury Settlement quotes at least one such procedure. *Id.* ¶ 6. Any records presently withheld that are captured by any such public disclosures cannot be shielded by a FOIA exemption and should be released immediately.

### III. The government has failed its burden to show that no information can be segregated.

"Under FOIA, if a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions." *Ctr. for Pub. Integrity v. U.S. Dep't of Com.*, 401 F. Supp. 3d at 116 (citing *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999)). "[A]n agency must provide a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Id.* (quotation and citation omitted).

DOJ makes no effort to meet this burden. It asserts that "the Department determined that no information could be reasonably segregated to allow disclosure," reasoning in an entirely circular fashion that "[t]he records withheld . . . are exempt from disclosure in full pursuant to FOIA Exemption 4 and, accordingly, no non-exempt information can be reasonably segregated for disclosure." Def.'s Mem. at 20. In support, DOJ cites the O'Keefe Declaration, which simply repeats the brief: "I have carefully reviewed the records at issue and determined that there is no non-exempt information that could be segregated for release. These records are exempt from disclosure in full pursuant to FOIA Exemption 4 and, accordingly, no non-exempt information can be reasonably segregated for disclosure." O'Keefe Decl. ¶ 50. This is precisely what the law forbids: "[a] blanket declaration that all facts are so intertwined to prevent disclosure under the

FOIA does not constitute a sufficient explanation of non-segregability." *Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 152 (D.D.C. 2017); *see Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) ("[A]n agency cannot justify withholding an entire document simply by showing that it contains some exempt material."); *Ctr. for Pub. Integrity v. U.S. Dep't of Com.*, 401 F. Supp. 3d at 118.

## IV.   DOJ seeks to shield criminal financial conduct—which DOJ has already publicized—under Exemption 4, without demonstrating its commercial and confidential nature.

Since the passage of FOIA, "freedom of information is now, by statute, the rule, and secrecy is the exception." *Wellford v. Hardin*, 315 F. Supp. 768, 770 (D.D.C. 1970). Here, the DOJ attempts to apply this maxim in reverse to withhold information related to the criminal conviction of a bank. DOJ claims that Exemption 4 applies to every word of all 1,677 pages of records thus far processed and that disclosure would jeopardize BNPP's commercial interests and competitive advantage.[6] DOJ's solicitude for BNPP's commercial interests is a recent phenomenon. There were no such qualms in 2014, when DOJ issued a 2,157-word press release detailing BNPP's criminality and even quoting from the very documents now being requested: "BNPP deliberately

---

[6] Much of DOJ's briefing on Exemption 4 discusses the voluntary nature of BNPP's submissions to DOJ and the purported substantial competitive harm that would result from disclosing the information. *See* Def.'s Mem. at 8-12. However, in 2019 the Supreme Court "clarified the meaning of 'confidential' information" with respect to Exemption 4 in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) and overruled the "substantial harm to the competitive position" framework articulated in *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 767 (D.C. Cir. 1974). *Besson v. U.S. Dep't of Com.*, 480 F. Supp. 3d 105, 112 (D.D.C. 2020) (Mehta, D.J.). Under the new framework, there is "a single test for determining whether information—regardless [of] whether voluntarily or involuntarily submitted to the government— is confidential under Exemption 4." *Stotter v. U.S. Agency for Int'l Dev.*, No. 14-cv-2156 (KBJ), 2020 WL 5878033, at *5 (D.D.C. Oct. 3, 2020). It must "at least . . . [be] both customarily and actually treated as private by its owner" and perhaps also "provided to the government under an assurance of privacy." *Food Mktg. Inst.*, 139 S. Ct. at 2366. Plaintiffs proceed with their argument under the current test.

disregarded U.S. law of which it was well aware, and placed its financial network at the services of rogue nations, all to improve its bottom line. Remarkably, BNPP continued to engage in this criminal conduct even after being told by its own lawyers that what it was doing was illegal."[7]

It is hard to conceive how BNPP's reputation and competitive advantage could get more tarnished, after DOJ's intense publicization of the underlying matters. This is particularly so given that the requested documents are now more than seven years old and reflect BNPP practices that have, hopefully, been discontinued since the plea deal. DOJ has already *made* BNPP's commercial misconduct an issue of great public interest—it cannot un-ring that bell now under Exemption 4.

Exemption 4 does not shield the requested records for three reasons. First, the business practices DOJ seeks to shield are in and of themselves illegal, and thus not commercial. Second, DOJ's conclusory and boilerplate recitations fail to substantiate that the information is indeed commercial and treated as confidential. Third, the information is too outdated to have meaningful commercial consequences. Finally, certain records appear to contain information that is either in the public record or is of a type deemed noncommercial by this Court.

 "Exemption 4 shields from disclosure 'commercial or financial information obtained from a person and privileged or confidential.'" *WP Co. LLC v. U.S. Small Bus. Admin.*, No. 20-cv-1240 (JEB), 2020 WL 6504534, at *5 (D.D.C. Nov. 5, 2020) (quoting 5 U.S.C. § 552(b)(4)). To invoke the exemption, DOJ must show that the information is "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential."[8] *Id.* (quotation omitted). To be "commercial,"

---

[7] DOJ Press Release: BNP Paribas Agrees to Plead Guilty and to Pay $8.9 Billion for Illegally Processing Financial Transactions for Countries Subject to U.S. Economic Sanctions (June 30, 2014), https://www.justice.gov/opa/pr/bnp-paribas-agrees-plead-guilty-and-pay-89-billion-illegally-processing-financial.

[8] Plaintiffs do not contest that the information was "obtained from a person" within the meaning of Exemption 4.

"[t]he government must show that the . . . information is 'both customarily and *actually* treated as private' in order to withhold it." *Id.* at 6 (quoting *Food Mktg. Inst.*, 139 S. Ct. at 2366) (emphasis added). It is the government's burden to make these showings with "reasonable specificity"; it cannot sustain the burden if its claims are "conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 2020 WL 4530596, at *2 (D.D.C. Aug. 6, 2020).

"[T]he definition of 'commercial' is not boundless." *Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 2021 WL 930350, at *3. "[R]ecords that actually reveal basic commercial operations, such as sales statistics, profits and losses, and inventories, or relate to the income-producing aspects of a business, fall within the scope of commercial information," *id.* (quotations omitted), as does information the disclosure of which "would cause commercial consequences." *Besson*, 480 F. Supp. 3d at 113. Critical for "FOIA's presumption in favor of disclosure," *Pub. Citizen, Inc. v. OMB,* 598 F.3d 865, 869 (D.C. Cir. 2010), however, "not every bit of information submitted to the government by a commercial entity qualifies for protection under Exemption 4.'" *Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 2021 WL 930350, at *3 (quoting *Pub. Citizen v. HHS*, 975 F. Supp. 2d 81, 101 (D.D.C. 2013)).

### A. Intrinsically illegal conduct is not commercial and FOIA does not protect a company's competitive advantage in profiting from crime.

The business practices DOJ now seeks to shield are in and of themselves illegal, and thus not commercial. "Exemption 4 cannot be used to shield illegal business practices under the guise of confidential business information." *Ctr. for Pub. Integrity v. U.S. Dep't of Energy*, 234 F. Supp. 3d at 76; *see Jud. Watch, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 2021 WL 930350, at *12. The DOJ seeks to do just that on BNPP's behalf.

According to the *Vaughn* Index, the information DOJ seeks to withhold consists of illegal

sanctions violating conduct of BNPP including:

- "BNPP's handling of U.S. economic sanctions or embargoes of countries including Sudan," *Vaughn* Index at 2;

- a "chart containing data entries for BNPP transactions pertaining to various embargoed or sanctioned countries, including Sudan," *id*. at 3;

- "BNPP general transaction and personnel policies regarding compliance with U.S. sanctions," *id*. at 4;

- "specific policies pertaining to individual countries, including Sudan," *id*.;

- "discussions regarding business scenarios (transactions) in relation to U.S. sanctions programs, and BNPP internal transaction processes" and "information," *id*.;

- "memoranda pertaining to BNPP business scenarios that may be impacted by U.S. financially embargoed or sanctioned countries, including Sudan," *id*. at 5-6.;

- "factual findings . . . pertaining to BNPP compliance with U.S. embargoes and sanctions, including those imposed on Sudan," *id*. at 6; and

- "BNPP transactions that are subject to sanctions and embargoes." *Id*. at 7.

The Cease & Desist Order with the Federal Reserve details at length the illegality of the above BNPP actions that the DOJ now seeks to shield. "BNP Paribas historically lacked adequate transparency, risk management, and legal and compliance review policies and procedures to ensure that activities conducted at offices outside of the United States complied with applicable OFAC regulations," and

> from at least 2002 through at least January 2010, BNP Paribas developed and implemented policies and procedures for processing certain U.S. dollar [ ] denominated funds transfers through the Branch and through other unaffiliated U.S. financial institutions involving parties subject to OFAC Regulations that omitted or concealed relevant information from payment messages that was necessary for the Branch and other U.S. financial institutions to determine whether these transactions were carried out in a manner consistent with U.S. law.

Ex. 6 at 2. BNPP's internal policies were "unsafe or unsound practices and violations of law." *Id*.

Such conduct is illegal and could not be used by competitors. Implausibly, DOJ claims that "disclosure of this confidential information would allow competitors to use the details of BNPP's internal operations, financial controls, and compliance programs as a free roadmap as to how BNPP operates internally, conducts transactions, and complies with international banking laws and regulations." Def.'s Mem. at 10-11. The statement is disingenuous at best: the criminal investigation that required BNPP to disclose these documents to the DOJ occurred because BNPP utterly failed to comply with banking laws and regulations.  Indeed, the government investigation that is the subject of this FOIA request culminated in a guilty plea in which BNPP admitted, among other things, that it

> conspired with banks and other entities located in or controlled by countries subject
> to U.S. sanctions, including Sudan . . . to knowingly, intentionally and willfully
> move at least $8,833,600,000 through the U.S. financial system on behalf of
> Sanctioned Entities in violation of U.S. sanctions laws, including transactions
> totaling at least $4.3 billion that involved [Specially Designated Nationals].

Ex. 3 ¶ 14. The bank admitted that it "provid[ed] Sudanese banks and entities access to the US. financial system," "despite the Government of Sudan's role in supporting international terrorism and committing human rights abuses during this time period." *Id.* ¶ 17.

This Court has held previously that information related to illegal activities could be nonetheless "commercial" information if it were possible to "separate [the company]'s bad acts from the information it seeks to protect," because the information would be "distinct from the misconduct itself." *Ctr. for Pub. Integrity v. U.D. Dep't of Energy*, 234 F. Supp. 3d at 77. To be commercial, the information must "not [be] itself unlawful or the product of inherently illegal activity." *Id.*

The BNPP activities DOJ seeks to shield are the "procedures or [ ] payment practices" BNPP "developed" or "utilized" that allowed it to "process[ ] thousands of transactions . . . in

apparent violation of U.S. economic sanctions programs against Sudan." Ex. 7 ¶ 6. The point of

the Bank's activity was to break the law. The logic of *Center for Public Integrity v. U.S. Dep't of*

*Energy* cannot apply where, as here, the "commercial" activity *was* the criminal behavior. The

details of this illegality cannot be protected under Exemption 4.

**B. DOJ fails to substantiate commerciality and confidentiality.**

DOJ claims that the information in its non-specific categories is "commercial" because it

"serves a commercial function," and it "is of a commercial nature" because it "is helpful or

instrumental to BNPP's business interests and operations." Def.'s Mem. at 9. For each category,

DOJ asserts that the documents in that category

> contain (or their disclosure would reveal) commercial or financial information
> obtained from BNPP that is privileged or confidential. BNPP customarily keeps
> such information private or closely held, DOJ provided an express or implied
> assurance of confidentiality to BNPP, and there were no express or implied
> indications at the time the record was submitted that DOJ would publicly disclose
> the information.

*Vaughn* Index at 3. This bald statement merely parrots the legal requirements and provides no

actual explanation or support for how the information is commercial or financial, privileged or

confidential.

DOJ again states without proper foundation that "BNPP has a commercial interest in the

information related to their business activities as establishing and maintaining these activities

requires a substantial dedication of company resources and protects the bank from potential

financial and reputational harm." Def.'s Mem. at 9-10. DOJ does not explain how the withheld

information is related to BNP's business activities, what business activities it is referring to, what

BNP resources are used to protect it, or how DOJ would have knowledge of such facts.

Furthermore, DOJ fails to address how BNPP would suffer financial and reputational harm given

its criminal convictions, which resulted in state and federal guilty pleas and payment of an $8.9

billion fine.

And although DOJ emphasizes that BNPP requested the documents be kept confidential—or, at least, labeled them as such for "FOIA purposes"— "[a] company's request for confidential treatment is not a sufficient basis for withholding information." *Ctr. for Auto Safety*, 133 F. Supp. 3d at 130. Otherwise, "any agency could, theoretically, simply hand out promises of confidentiality . . . in order to avoid judicial review as to whether a record can be withheld." *Id.* (citation and quotation marks omitted).

### C. Outdated information with no meaningful commercial consequences is not exempt.

"A company may have a commercial stake in requested information when its disclosure would cause commercial consequences." *Besson*, 480 F. Supp. 3d at 113. DOJ's claim that disclosure of the information here would have some commercial consequence presupposes that the information relates to current BNPP activities, because there would be limited, if any, commercial consequence if out of date policies and procedures were disclosed. *See Ctr. for Auto Safety*, 133 F. Supp. 3d at 132.

The *Vaughn* Index is replete with old information that has subsequently been overhauled due to BNPP's conviction—which DOJ now seeks to protect as commercial. This includes "BNPP general transaction and personnel policies regarding compliance with U.S. sanctions [and] specific policies pertaining to individual countries, including Sudan," *Vaughn* Index at 4; "various administrative and compliance documents pertaining to BNPP's policies for embargoed countries generally, as well as country-specific policies, including Sudan," *id*. at 5; "guidelines and instructions for BNPP to comply with sanctions and embargoes imposed on countries, including those placed upon Sudan by the U.S.," *id*. at 7; and "compliance memoranda authored by BNPP employees regarding BNPP's compliance with international financial embargoes and sanctions" that "discuss how BNPP may comply with sanctions and financial embargoes." *Id*. at 8.

In its Cease & Desist Order with the Federal Reserve and the French banking authority, BNPP agreed to an extensive overhaul of its compliance policies and procedures; it would relocate to the United States an office responsible for BNPP's compliance with OFAC regulations ("U.S. OFAC Compliance Office"), which would, among other things, establish "an OFAC compliance reporting system," "policies and procedures to ensure compliance with OFAC Regulations," and "training for BNP Paribas's employees in OFAC-related issues." Ex. 5 at 6. And, according to its settlement with Treasury, BNPP took "global remedial actions . . . includ[ing] policy changes," Ex. 7 ¶ 23, "terminated the conduct [at issue] . . . and [ ] established, and agree[d] to maintain, policies and procedures that prohibit, and are designed to minimize the risk of the recurrence of, similar conduct in the future." *Id.* ¶ 26.

As a result, if the compliance policies and procedures that were in place at BNPP while it engaged in the criminal behavior were ever commercial, they are not the compliance policies and procedures used by BNPP today.

**D. Inherently public and noncommercial information cannot be exempted.**

DOJ's *Vaughn* Index includes information that cannot be confidential because it is neither customarily nor actually kept private. Information contained in public documents "is arguably *not* actually treated as private, as required by *Food Marketing Institute*." *Besson*, 480 F. Supp. 3d at 114 (alteration and quotation omitted). According to the *Vaughn* Index, "Emails" includes "explanatory information regarding U.S. financial embargoes and sanctions," *Vaughn* Index at 4; "Document Production Indices" includes "memoranda regarding overviews of financial embargoes and sanctions," *id.* at 5; so does "Compliance Memoranda," *id.* at 8; "Internal BNP Presentations" includes discussions of "how sanctions and embargoes are enforced," *id.* at 7; and "Advice Memoranda from Outside Counsel" includes explanations of "U.S. authority over foreign banks as it pertains to U.S.-imposed financial embargoes and sanctions programs." *Id.* at 9. All of

this simply describes federal law and policy and is, therefore, inherently reflected in public documents.

DOJ's *Vaughn* Index also includes routine personnel information that is deemed noncommercial. As this Court has held, the name, title, and responsibilities of employees are not "commercial" under Exemption 4. *See Pub. Citizen v. U.S. Dep't of Health & Hum. Servs.*, 975 F. Supp. 2d 81, 105-06 (D.D.C. 2013); *Besson*, 480 F. Supp. 3d at 112. And yet, DOJ's withheld information improperly includes "Interview Summary Memoranda" with "interviewee's position and responsibilities within BNPP." *Vaughn* Index at 1-2. In order to withhold this information, DOJ would need to "identify specific evidence demonstrating something unique about the names that logically or plausibly renders them commercial in nature or function." *Besson*, 480 F. Supp. 3d at 112. It has made no effort to do so here. DOJ also fails to explain what is commercial about "interactions with BNPP personnel and compliance departments," or generic "meeting notes." The "Interview Summary Memoranda" apparently "reflect outside counsel for BNPP's interview strategy"—which is information that belongs to outside counsel, not to BNPP.

**V.  DOJ fails to demonstrate how disclosure of a convicted criminal defendant's documents would elucidate the inner workings of the grand jury, as required by Exemption 3.**

DOJ has withheld six categories of documents under Exemption 3, which covers information "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). This includes "a disclosure violative of Federal Rule of Criminal Procedure 6(e), which provides for the secrecy of grand jury proceedings," on which DOJ relies here. *See CREW II*, 746 F.3d at 1100.

There "is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers." *Lopez v. U.S. Dep't of Just.*, 393 F.3d 1345, 1349 (D.C. Cir. 2005); *see also Church of Scientology, Int'l v. U.S. Dep't of Just.*, 30 F.3d 224, 236 (1st Cir. 1994) ("It cannot

be that exposure to the grand jury immunizes information from future disclosure, regardless of its impact on the interest underlying Rule 6(e).").  To the contrary, "information coincidentally before the grand jury" may be "revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury." *Senate of P.R. ex rel. Judiciary Comm. v. U.S. Dep't of Just.*, 823 F.2d 574, 582 (D.C. Cir. 1987) (quotations and citations omitted).

Here, DOJ fails to establish a "nexus between disclosure and revelation of a protected aspect of the grand jury's investigation." *See CREW II*, 746 F.3d at 1100; *Lopez*, 393 F.3d at 1350. On their face, certain categories of documents are not protected grand jury materials because they appear to have been "created for purposes independent of grand jury investigations, [and] have legitimate uses unrelated to the substance of the grand jury proceedings." *Church of Scientology*, 30 F.3d at 235. For example, DOJ's categorical description of the withheld documents include charts of BNPP's financial transactions with countries under sanction, as well as emails, memoranda, and presentations regarding BNPP's compliance with U.S. sanctions laws. *See generally*, *Vaughn* Index. These documents could include documents prepared as part of an internal investigation—and, therefore, independent of and/or extrinsic to any grand jury investigation—but DOJ does not address this issue in its brief or supporting materials. *See Senate of P.R.*, 823 F.2d at 585 n.11 (noting that the government failed to provide a detailed basis to determine the purpose for which withheld documents were created).

Nor does DOJ provide any detail in its supporting documents of how the disclosures would implicate the "secrecy concerns protected by Rules 6(e)." *Church of Scientology*, 30 F.3d at 235. Courts in this Circuit and others recognize that "Rule 6(e) does not cover all information developed during the course of a grand jury investigation, but only information that would reveal . . . [what] actually occurred before the grand jury." *See CREW I*, 955 F. Supp. 2d at 23 (quoting *In re Compl.*

*Against Circuit Judge Richard D. Cudahy*, 294 F.3d 947, 951 (7th Cir. 2002)).

**VI.  The 6 and 7(C) privacy exemptions do not apply: the public has a compelling interest in understanding whether the government's plea deal is an adequate sanction and deterrent, while BNPP's staff and attorneys have minimal or no privacy interests.**

Exemptions 6 and 7(C) exempt records from disclosure when the public's interest in access to information is outweighed by the privacy interests of individuals. Here, the public—and in particular the Sudanese American population that experienced genocide—has an interest in knowing whether the government gave BNPP a sweetheart deal, or rather swift justice, in the face of one of the worst bank crimes in U.S. history and the first genocide of the 21st Century. That interest outweighs the purported privacy interests of the Bank's employees and attorneys, who committed that crime and/or negotiated the deal. First, much of the information is already in the public record. Second, under D.C. Circuit case law, there is no privacy interest in business activities or in concealing convicted criminal conduct. Finally, attorneys have no privacy interest in their representational capacity. Moreover, even if certain information would be shielded under 6 or 7(C), only redaction, not withholding, would be appropriate.

**A.  The balancing test between personal privacy and public interest is nearly identical for Exemptions 6 and 7(C).**

Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) similarly protects from disclosure "records or information compiled for law enforcement purposes" where disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

The parties agree that Exemption 6 is more stringent, requiring a "clearly unwarranted invasion of privacy." *See* O'Keefe Decl. ¶ 37 n.5. Thus, if Exemption 6 is *not* satisfied, neither is

Exemption 7(C). *See Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

The balancing test is roughly the same for both exemptions, and Plaintiffs, like Defendant, will address both exemptions at the same time. To determine whether Exemption 6's "clearly unwarranted" standard is met, the Court must "weigh the privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of privacy." *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 46 (D.C. Cir. 1999) (quotation omitted). Similarly, "[i]n deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), [a court] must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quotation and citation omitted).

The key public interest, relevant to both exemptions, is "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 75 (D.D.C. 2007) (Exemption 6); *Davis v. U.S. Dep't of Just.*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (Exemption 7(C)).

**B. Public interest in accountability outweighs individual interests in concealing business activities that were already subject to criminal conviction and are, in large part, already public.**

The government claims that the following batches of documents are subject to

withholding under Exemptions 7(C) and 6:

> **CRM-01** (Interview Summary Memoranda): "These documents contain the names and identifying information of outside counsel for BNPP."
>
> **CRM-03** (Emails): "These documents contain the names and identifying information of BNPP personnel, as well as identifying information of outside counsel hired by BNPP."
>
> **CRM-07** (Compliance Memoranda): "These documents contain the names and identifying information of BNPP employees."

> **CRM-08 (**Advice Memoranda from Outside Counsel): "These documents contain the names and identifying information of outside counsel for BNPP."

*Vaughn* Index at 1-2, 4-5, 8-9.[9]

The government asserts that the inclusion of four categories of data in document batches CRM-01, -04, -07, and -08 justify the withholding of all documents in each batch, specifically: "(1) the names and identifying information of BNPP personnel; (2) contact information for BNPP employees, including email addresses; (3) names and identifying information of outside counsel for BNPP; and, (4) contact information for outside counsel, including email addresses, as well as office and mobile phone numbers." Def.'s Mem. at 14-15; *see also* O'Keefe Decl. ¶ 39.

### 1.    Certain information is already public.

"Information is 'private' when it is intended for or restricted to the use of a particular person or group or class of persons: not freely available to the public." *Archibald v. U.S. Dep't of Just.*, 950 F. Supp. 2d 80, 87 (D.D.C. 2013) (quotation and citations omitted). The names and identifying information of many executives and officers of BNPP are in the public domain and therefore cannot provide a basis for withholding. *See, e.g.*, *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) ("Under our public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed . . . .").

For example, "Group Chief Operating Officer Georges Chodron de Courcel" was named in the press as having to leave BNPP as a result of BNPP's violations of the sanctions regime.[10]

---

[9] As explained *supra*, Section I, the information in the *Vaughn* Index is insufficient and conclusory as to all the exemptions, and it fails to substantiate the government's claims of withholding under Exemption 6 or 7(C).

[10] *See, e.g.*, Joseph Ax, et al., *U.S. Imposes Record Fine on BNP in Sanctions Warning to Banks*, REUTERS, June 30, 2014, https://www.reuters.com/article/us-bnp-paribas-settlement/u-s-imposes-record-fine-on-bnp-in-sanctions-warning-to-banks-idUSKBN0F52HA20140701; Jessica Silver-Greenberg & Ben Protess, *BNP Paribas Executive May Leave in Deal with Regulator*, DEALBOOK,

Similarly, "Vivien Levy-Garboua, a senior adviser and one-time head of compliance for BNP" was named in the press as involved in BNPP's activities.[11] This is not a comprehensive review of the names of BNPP personnel that has been publicly identified; the burden to identify such persons lies properly with the government since only it knows which persons are named in the documents and can search the public media for references to those names.

In addition, certain names have become public in the government's own case against BNPP. For example, the public settlement agreement between BNPP and OFAC disclosed the name of BNPP's "Group General Counsel," Georges Dirani. Mr. Dirani's name is publicly associated with BNPP's guilty plea and settlement and his identity cannot form the basis for any withholding.

### 2. The public interest is compelling and the alleged privacy interests are insufficient.

#### a. The public interest is overwhelming.

"[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." *Davis*, 968 F.2d at 1282 (quotations omitted). The same is true for Exemption 6. *See Bigwood*, 484 F. Supp. 2d at 75.

BNPP's involvement in the Darfur genocide through its decade-long sanctions violations— and the government's prosecution of the same—has received widespread media coverage.[12] The

_____

June 5, 2014, https://dealbook.nytimes.com/2014/06/05/bnp-executive-asked-to-leave-amid-investigation/

[11] *See, e.g.*, Michael Stothard, et al., *BNP Top Executive Chodron de Courcel to Retire Amid US Probe*, FINANCIAL TIMES, June 12, 2014, https://www.ft.com/content/cb25fa46-f200-11e3-9015-00144feabdc0

[12] *See, e.g.,* Joseph Ax, et al., *U.S. Imposes Record Fine on BNP in Sanctions Warning to* Banks, REUTERS, June 30, 2014, https://www.reuters.com/article/us-bnp-paribas-settlement/u-s-imposes-record-fine-on-bnp-in-sanctions-warning-to-banks-idUSKBN0F52HA20140701; Press Release,

public has a compelling interest in understanding how the government responded to one of the worst banking crimes in U.S. history. It has an interest in understanding how the government holds financial institutions accountable for undermining economic sanctions and for complicity in genocide. BNPP's criminal conduct and plea deal is not garden-variety white-collar crime: it implicates foreign policy matters of great concern to the American public, particular to members of the Sudanese American community, including Plaintiffs.

The public has a right to understand "what the government was up to" when it allowed BNPP to plead guilty and avoid sanctions such as imprisonment. In order to understand the gravity of the crime and the proportionality of the sanction, the public must know what the government knew about BNPP's activities. In order to evaluate whether the government's deal effectively protects the public from BNPP and its staff, the public must know who was involved in the wrongdoing. Without that information, the public has no way of knowing whether the government has adequately deterred such individuals from once again financing genocide or whether, in the revolving door of the financial sector, such individuals are exercising positions of influence over the U.S. economy or foreign policy. Thus, the disclosure sought by Plaintiffs inform this ongoing public discussion related to the scope and effectiveness of the government's enforcement of its sanctions regime and its success in bringing violators to justice. *See generally ACLU*, 655 F.3d at 1.

The government contends that "[n]either those BNPP employees nor outside counsel

---

*BNP Paribas Bank Pleads Guilty, Pays $8.83 Billion in Penalties for Illegal Transactions* (June 30, 2014), https://www.manhattanda.org/bnp-paribas-bank-pleads-guilty-pays-883-billion-penalties-illegal-transactions/; Global Witness, *Banks and Dirty Money: How the Financial System Enables State Looting at a Devastating Human Cost* (Oct. 2015), https://www.globalwitness.org/documents/18012/Banks_and_Dirty_Money_Global_Witness.pdf

affiliated with BNPP's internal review were publicly acknowledged or affiliated with the Department's investigation," and that "[a]ccordingly, the Department has not identified any cognizable public interest in the disclosure of this kind of information. Release of these personal details would not add to the public's understanding of how the Department operates or how well it performs its statutory duties." Def.'s Mem. at 15. This is nonsense. The information withheld is crucial to the public's understanding of how DOJ enforced the government's sanctions regime by permitting insight into breadth and depth of the investigation it undertook, which necessarily includes the documents it demanded from BNPP. It is necessary to evaluate the thoroughness and efficiency of DOJ's operations.

Further, this argument assumes that the government may judge what would (and would not) add to the public's understanding of one of the largest and most punished banking crimes in history, but this is for the public to judge:

> FOIA, at its core, operates on the assumption that "it is for the public to know *and then* to judge." The public has an interest in knowing "that a government investigation itself is comprehensive, that the report of an investigation released publicly is accurate, that any disciplinary measures imposed are adequate, and that those who are accountable are dealt with in an appropriate manner." That is how FOIA helps "to hold the governors accountable to the governed."

*Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 69 (D.C. Cir. 2018) (quoting *Stern v. F.B.I.*, 737 F.2d 84, 94 (D.C. Cir. 1984)) (emphasis added). "[T]he public interest in knowing what [the agency] did weighs heavily." *Id.* Put differently, the fact that the information being withheld relates to individuals that are not government employees does not render the documents irrelevant. The documents requested and reviewed by the government during its investigation of BNPP can show the government's understanding of the overall conspiratorial conduct committed by BNPP in the United States (as can the absence of a request). It can illuminate DOJ's zeal or tardiness. It can

outline its commitment to following leads, or its failure to do so.[13]

Rather than engage with these public interests, DOJ's O'Keefe Declaration merely reiterates what the government stated in its memorandum and restates the statutory language. "[V]ague, conclusory affidavits, or those that merely paraphrase the words of a statute, do not allow a reviewing judge to safeguard the public's right of access to government records." *Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784, 787 (D.C. Cir. 1980).

### b. The alleged privacy interest at stake is insufficient.

In the face of this overwhelming public interest in accountability, DOJ presents no significant, countervailing privacy interests.

As to the information related to BNPP's lawyers, the law is settled. Attorneys "have little or no privacy interest in their 'representational capacity . . . . ' Defendants cannot rely on Exemption 7(C) to withhold [ ] lawyers' names." *King & Spalding, LLP v. U.S. Dep't of Health & Hum. Servs.*, 395 F. Supp. 3d 116, 122 (D.D.C. 2019) (citations omitted). Nor does "Defendant[] present any evidence . . . that disclosure would place at risk the lawyers' personal safety or expose them to harassment." *Id.*

---

[13] The government's citations to *Beck v. Department of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) and *U.S. Department of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 773 (1989) are readily distinguishable. In *Beck*, the information was only the "identity of one or two individual relatively low-level government wrongdoers," which if "released in isolation, does not provide information about the agency's own conduct." *Beck*, 997 F.2d at 1493. The information here concerns the criminal prosecution of the fourth largest bank in the world, resulting in the largest criminal penalty ever assessed by the U.S. government up to that time. *See also CREW II*, 746 F.3d at 1092-93. And by contrast to *Reporters Committee*, this is not a case where a third-party private individual is named in passing in a government document; here, the government agency actively interacted with an international bank accused of violating trade sanctions and enabling foreseeable genocide, requested thousands of documents, and negotiated a plea deal.

As to BNPP's employees, the "privacy exemption does not apply to information regarding professional or business activities, [which] . . . must be disclosed even if a professional reputation may be tarnished . . . ." *Cohen v. E.P.A.*, 575 F. Supp. 425, 429 (D.D.C. 1983) (addressing invasion of privacy in Exemption 7(C)). In other words, business activity containing personal information does not justify withholding.

The D.C. Circuit is explicit: "Information relating to business judgments and relationships does not qualify for exemption." *Wash. Post Co. v. U.S. Dep't of Just.*, 863 F.2d 96, 100 (D.C. Cir. 1988) (citations omitted). Rather, the "disclosures with which [Exemption 7(C)] is concerned are those of 'an intimate personal nature' such as marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights, and reputation." *Id.* Similarly, "individualized information on matters such as welfare receipts, paternity, and alcohol consumption" would be appropriately protected. *Rural Hous. Alliance v. U.S. Dep't of Agric.*, 498 F.2d 73 (D.C. Cir. 1974).

Here, no "intimate personal" information is at stake. The government is concerned only with the names and contact information of BNPP personnel and BNPP's attorneys, acting in their business capacities. Accordingly, it is wholly inappropriate to categorically withhold this information.

Withholding is all the more inappropriate given the criminal nature of those business activities, as established through the guilty plea. Courts have held that wrongdoing deprives an individual of the full privacy protection that might otherwise be afforded under FOIA exemptions protecting personal privacy. *See, e.g.*, *Common Cause v. Nat'l Archives & Recs. Serv.*, 628 F.2d 179 (D.C. Cir. 1980) (holding disclosure under Exemption 7(C) not met where request sought disclosure of names of candidates and corporate contributors related to Watergate investigation of

improper corporate campaign contributions).[14]

BNPP's admission of guilt resulting in criminal conviction constitutes such wrongdoing. Almost seven years ago,  the government's investigation of BNPP culminated in a guilty plea and in sensational media coverage initiated by DOJ. Numerous BNPP employees implicated in those crimes have been publicly exposed. And even those whose names are not yet public have no cognizable privacy interest in concealing their role in a criminal conspiracy established through conviction. Simply put, an agency may not "exempt from disclosure all of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address." *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C.Cir. 1995).[15]

### c.  Redacted documents can be produced.

Even if the government's concerns as to privacy were sufficient to meet the test under Exemptions 7(C) and 6 and those interests somehow outweighed the public interest—which they do not—then the documents could easily be produced with the names and contact information redacted. It is routine procedure for documents produced in response to FOIA requests to contain

---

[14] *See also Lissner v. U.S. Customs Serv.*, 241 F.3d 1220 (9th Cir. 2001) (holding disclosure under FOIA was required and Exemption 7(C) not met when customs officials may have improperly given police officers preferential treatment because of their status); *Columbia Packing Co. v. U.S. Dep't of Agric.*, 563 F.2d 495 (1st Cir. 1977) (holding disclosure of personnel records of federal meat inspectors who were convicted of taking bribes was not a clearly unwarranted invasion of personal privacy under FOIA and therefore disclosure was required); *Bennett v. Drug Enf't Admin.*, 55 F. Supp. 2d 36 (D.D.C. 1999) (holding disclosure of records of government payments to and the criminal history of a government informant was not an unwarranted invasion of personal privacy under the FOIA).

[15] Although the government asserts that "names of law enforcement officers" and "law enforcement personnel" have "protectable privacy interests in their anonymity," Def.'s Mem. at 13-14, the statement has no application here. The government's withholding reasons relate to BNPP's staff and lawyers, not to law enforcement personnel.

redactions. Courts routinely permit the production of documents with names redacted to accommodate valid privacy concerns. *See, e.g.*, *Braun v. U.S. Postal Serv.*, 317 F. Supp. 3d 540, 550 (D.D.C. 2018); *Pinson v. U.S. Dep't of Just.*, 243 F. Supp. 3d 74, 84 (D.D.C. 2017); *Plunkett v. Dep't of Just.*, 202 F. Supp. 3d 59, 63 (D.D.C. 2016); *Cooper v. U.S. Dep't of Just.*, 169 F. Supp. 3d 20, 37-38 (D.D.C. 2016); *Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.D.C. 2009); *VoteHemp, Inc. v. Drug Enf't Admin.*, 567 F. Supp. 2d 1, 16 (D.D.C. 2004); *Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 332 (4th Cir. 2016). It "is a violation of the [Freedom of Information] Act to withhold documents on the ground that parts are exempt and parts non-exempt. In that event, 'suitable deletions' may be made." *Wellford*, 315 F. Supp. at 770.

## VII.   As this Court already concluded, Exemption 7(A) cannot apply when the investigation has concluded and any statute of limitations has run.

This Court has already denied summary judgment to the government on its Exemption 7(A) withholding. *See Majuc*, 2019 WL 4394843, at *1. Under the "law-of-the-case" doctrine, "a court involved in later phases of a lawsuit should not re-open questions decided . . . by that court or higher one in earlier phases." *Ferring Pharm., Inc. v. Azar*, 296 F. Supp. 3d 166, 175 (D.D.C. 2018) (quotation omitted). "[T]he same issue presented a second time in the same case in the same court should lead to the same result." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc). DOJ acknowledges this reality only in passing; it claims in a footnote that, "mindful" of the fact that its use of Exemption 7(A) was already denied, it this time "applied [the exemption] on a record-by-record basis." Def.'s Mem. at 16 n.10. Despite this claim, DOJ's approach is facially not "record-by-record." The *Vaughn* Index shows that vast swaths of documents were lumped together with no individualized treatment discernible. DOJ further adds to the confusion by creating, for Exemption 7(A), additional categories out of its *Vaughn* Index categories: "Documents related to transactions, banking/and or [*sic*] business entities," "Emails," and

34

"Internal Review documents." Def.'s Mem. at 17. Those three categories apparently "generally fall within one category: evidentiary and investigative materials." Def.'s Mem. at 18.

In addition, DOJ's attempted application of the exemption does not address the problems the Court identified in originally rejecting the exemption. Exemption 7(A) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information [ ] could reasonably be expected to interfere with enforcement proceedings." *CREW II*, 746 F.3d at 1096 (quoting 5 U.S.C. § 552(b)(7)(A)). To invoke the exemption "DOJ must [ ] demonstrate that disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Id.* (quotation and citation omitted). The exemption is "temporal in nature" and DOJ must show that the material "relates to a concrete prospective law enforcement proceeding." *Id.* at 1097 (quoting *Juarez v. Dep't of Just.*, 518 F.3d 54, 58 (D.C. Cir. 2008)) (quotation omitted). "[R]eliance on Exemption 7(A) may become outdated when the proceeding at issue comes to a close." *Id.*

The investigation that is the subject of the FOIA request concerns actions taken by BNPP and its employees that ended in 2007. As this Court previously observed, "[t]he DOJ has not explained how any entity or person remains exposed to criminal liability for conduct that ceased more than a decade ago." *Majuc*, 2019 WL 4394843, at *3. That failure continues, as does DOJ's failure to address the expiration of BNPP's probationary period, which DOJ concedes expired last year.[16]  *See* O'Keefe Decl. ¶ 44. "For [Exemption 7(A)] to apply, a 'proceeding must remain pending at the time of [the court's] decision, not only at the time of the initial FOIA request.'" *Majuc*, 2019 WL 4394843, at *2 (quoting *CREW II*, 746 F.3d at 1097). Although O'Keefe's

---

[16] DOJ also does not show that a probationary period qualifies as an ongoing investigation at all. *See Majuc*, 2019 WL 4394843, at *3.

declaration asserts in passing that the "records subject to this briefing do not include records referenced in the Statement of Facts entered by the parties in *U.S. v. BNP Paribas S.A.*"—that is, the facts accompanying BNPP's guilty plea—DOJ does not address "the[ ] detailed disclosures [of this information], let alone evaluate how [they] might impact the asserted risks of premature disclosure." *Id.* at *4. DOJ also continues to refer only to unspecified "ongoing enforcement proceedings," even though "[v]ague mentions of ongoing proceedings are not enough to support Exemption 7(A)." *Id.* at *2.

Moreover, in order for the court to "determine that, as a matter of law, disclosure could reasonably be expected to interfere with enforcement proceedings," DOJ must provide "specific information about the impact of the disclosures." *CREW II*, 746 F.3d at 1099. It is "not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; 'it must rather demonstrate *how* disclosure' will do so." *Id.* at 1098. DOJ claims that if the records were disclosed, "identification of individuals, entities, and potential witnesses who possess information relative to the investigations would subject those individuals to possible harm and/or intimidation and could lead to their refusal to cooperate with the investigation along with negative consequences to their well-being." Def.'s Mem. at 19. "It would also allow subjects of the investigations to assess the likelihood that he or she may be prosecuted and/or convicted in connection with the investigations." *Id.*

DOJ provides no explanation as to how this harm would occur based in these records, as it is required to do. As is true "[i]n [a] typical case, here the requested records relate to a specific individual or entity"—in this case, BNPP. *CREW II*, 746 F.3d at 1098. Generally, that "mak[es] the likelihood of interference readily apparent." *Id.* But as was the case in *CREW II*, the documents requested relate to an entity about which the investigation has plainly concluded: here in a guilty

plea. *See id.* at 1099 ("Here, by contrast, the documents requested relate to DeLay, who is no longer under investigation; he was told more than three years ago that he would not be charged. Thus, the relevant question is whether any of the responsive records, which are primarily about DeLay, would disclose anything relevant to the investigation of *those* individuals."). DOJ's brief and declaration on Exemption 7(A) are concerned with the identification of entities and individuals, *see, e.g.*, O'Keefe Decl. ¶ 48, but DOJ does not address at all that the records are about BNPP.

## CONCLUSION

Clear material issues of fact still exist in this case where DOJ's *Vaughn* Index and Declaration are impermissibly vague and conclusory, such that Plaintiffs cannot meaningfully challenge their assertions. Additionally, many of DOJ's withheld records fall within the public domain and the government has failed to meet the requirements of any specific FOIA exemption. DOJ's disclosure of the contested records is warranted and long overdue. Accordingly, the Court should deny DOJ's motion for summary judgment and order the release of the requested documents.

Dated: April 9, 2021
  New York, New York

        Respectfully submitted,

        /s/ *Kathryn Lee Boyd*
        Kathryn Lee Boyd
        Theodor Bruening
        Shira Lauren Feldman
        Hecht Partners LLP
        125 Park Avenue, 25th Floor
        New York, NY 10017
        (646) 502-9515
        (646) 396-6452
        (646) 480-1453
        lboyd@hechtpartners.com
        tbruening@hechtpartners.com
        sfeldman@hechtpartners.com

        /s/ *Brent W. Landau*
        Brent W. Landau
        Hausfeld LLP
        325 Chestnut Street, Suite 900
        Philadelphia, PA 19106
        (215) 985-3273
        blandau@hausfeld.com

        Scott A. Gilmore
        Hausfeld LLP
        888 16th Street NW, Suite 300
        Washington, DC 20006
        (202) 540-7200
        sgilmore@hausfeld.com

        *Attorneys for Plaintiffs*